165 N.J. Super. 149 (1979)
397 A.2d 1101
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT
v.
SALLIE WASHINGTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1978.
Decided January 12, 1979.
*151 Before Judges LORA, MICHELS and LARNER.
Mr. Michael Pedicini, designated attorney, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Ms. Susan W. Sciacca, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by LORA, P.J.A.D.
Defendant was tried to a jury and convicted of possession of heroin. A motion for a judgment of acquittal and alternatively for a new trial was denied, and she was sentenced to the Mercer County Detention Center for a term of nine months.
On appeal defendant contends that (1) she was denied a fair trial by virtue of the State's negligent destruction of evidence which precluded defense counsel from effectively cross-examining the State's witnesses; (2) the prosecutor committed reversible error by cross-examining defendant regarding her silence after arrest; (3) the State failed to prove chain of possession; (4) the trial judge's refusal to permit the defense to fully cross-examine the State's witnesses violated *152 defendant's right to cross-examination, and (5) the prosecutor's questioning of defendant as to her prior use of heroin was prejudicial and the trial judge erred in not granting defendant's motion for a mistrial.
We have reviewed the entire record and have concluded that with the exception of the issue of the destruction of the physical evidence of the narcotics, paraphernalia and the purses in which they were contained, the contentions of the defendant are clearly without merit. R. 2:11-3(e)(2).
The record shows that pursuant to a valid warrant and consequent searches and seizures by the Trenton Vice Enforcement Unit, Officer James Taylor headed for the middle bedroom on the second story of the three-story residence involved. Upon opening the door to the room, Taylor observed defendant throw a black purse out of the window. He yelled that stuff was being thrown outside, in order to alert his fellow officers to retrieve the purse. After securing the room, defendant and her companion, Taylor went to the window and spotted the purse in the alleyway.
In the meantime Officer Plumeri, having heard Taylor's shout, ran into the alleyway and picked up the purse. He described the purse as being about the size of a cosmetics case  four or five inches long and about two or three inches high. In the purse Plumeri found a bottle cap with a bobby pin around it, four needles with plastic holders, a homemade syringe, seven aluminum foil packets containing a white powder substance, and a manila envelope containing some green vegetation. Plumeri subsequently gave the purse to Taylor, who corroborated Plumeri's testimony as to the contents of the purse.
Defendant testified she did not throw the black purse out of the window; that she threw only a manila envelope containing marijuana into the alleyway; and she denied owning the black purse, asserting it belonged to Larry Davis, who was apprehended along with defendant and several others during the raid.
*153 After Taylor examined the purse he turned it over to Officer Hunt, who was in charge of evidence. Taylor then went into the front second-floor bedroom and confiscated a blue purse containing a homemade syringe and a hypodermic needle, all of which he turned over to Hunt. The officers then took all of the evidence and the suspects to police headquarters. There, when defendant saw the black purse and was told the police were attributing its possession to her, she denied that it belonged to her. She admitted the reefer was hers but not the other items in the purse and said she did not know how the reefer got in the purse. However, she did not at that time tell the police officers that the purse belonged to Larry Davis.
At headquarters Hunt separated all the evidence seized during the raid into five groups. Item B was made up of the seven aluminum foil packets found in the black purse. Hunt then gave the evidence and form requesting a State Police Laboratory analysis to Lieutenant Robert Shaw, the unit commander, who sent everything on to the lab where chemist Kenneth Kawalek tested and found that the Item B foil packets contained heroin. The evidence was later returned to Lieutenant Shaw, who held it in the unit evidence room at police headquarters.
Before defendant's case came to trial Lieutenant Shaw mistakenly destroyed the heroin, the two purses and paraphernalia. Shaw testified that when he received a certain document from the prosecutor's office indicating that the case against one of defendants had been disposed of, he assumed that it was no longer necessary to retain the evidence. He based this assumption upon the fact that the document did not at its foot note that there were codefendants or companion cases and that he should hold the evidence, as was the practice when codefendants were involved in a prosecution. Although he had participated in the raid and was aware that there had been five or six defendants, he went by the property receipt number on the document, and since there was no indication that he was to hold the evidence, he assumed *154 "everything was disposed of because I didn't get nothing from anybody else." He characterized his action as an "oversight." The narcotics were burned in the incinerator at the New Jersey Hospital and the other items including the black purse were smashed and discarded in the garbage.
Defendant contends that since the purse which constituted the essential link between defendant and the heroin was not available at trial, her ability to contest the source of the purse as coming from the defendant was seriously impaired. Defendant also asserts that without the purse and its contents she was denied a fair opportunity to make affirmative use of this evidence on cross-examination since the size, color and shape of the purse were of paramount importance for the jury to consider whether the items testified to could fit in this relatively small purse, the colors of each purse, the size of the manila envelope allegedly found inside the black purse, the size of the needles, the "cooker" and the seven decks of heroin.
In support of her contention that she was thereby denied due process defendant analogizes the situation here involved to cases in which evidence was suppressed, whether knowingly or inadvertently, where the evidence was material and the withholding was prejudicial. See, e.g., United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendant further relies on United States v. Heath, 147 F. Supp. 877 (D. Haw. 1957), dism'd 260 F.2d 623 (9 Cir.1958), where the government lost tax records essential to the preparation of a defense to the charges contained in the indictment, and United States v. Consolidated Laundries Corp., 291 F.2d 563 (2 Cir.1961), where in a Sherman Act prosecution the government failed to make available to defendants the contents of a file which had been misplaced during trial. The file contained papers belonging to a government witness relevant to defendants' contentions that the witness had exaggerated damage caused by a strike, allegedly instigated by defendants, as well as his *155 investment in, and profits of, his business, and which would have been of benefit to defense counsel in cross-examining the witness. See also, State v. Lewis, 137 N.J. Super. 167 (Law Div. 1975).
Conceding that there must be a showing that the evidence suppressed, lost or destroyed was material to the defense, defendant asserts that this requirement may be satisfied even though the evidence would do no more than affect the credibility of a witness whose testimony prejudiced defendant's case. United States v. Smith, 480 F.2d 664 (5 Cir.1973). It should be noted, however, that evidence, to be sufficiently material, must be useful as to discredit a witness to the point of probably or possibly affecting the result of the trial. Id. at 668, citing Link v. United States, 352 F.2d 207 (8 Cir.1965), cert. den. 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966).
Generally, when there has been a loss or destruction of physical evidence in a criminal trial, the court must determine whether defendant has thereby been denied due process and a fair trial. United States v. Picariello, 568 F.2d 222 (1 Cir.1978). To do so, the court must determine (1) whether there was bad faith or connivance on the part of the government and (2) whether defendant was prejudiced by the loss or destruction of the evidence. United States v. Eisler, 567 F.2d 814 (8 Cir.1977); United States v. Heiden, 508 F.2d 898 (9 Cir.1974); United States v. Henry, 487 F.2d 912 (9 Cir.1973); Munich v. United States, 363 F.2d 859 (9 Cir.1966), cert. den. 386 U.S. 974, 87 S.Ct. 1167, 18 L.Ed.2d 135 (1967).
Here, the record establishes that the destruction of the evidence was caused by a clerical error in a codefendant's disposition sheet and the police custodian's good faith belief that the evidence was of no further use. Moreover, defendant does not argue bad faith on the part of the State, but rather contends that the negligent destruction of the evidence is tantamount to a negligent withholding of evidence constituting *156 a breach of the government's duty to make relevant evidence available to the defense.
In State v. Laganella, 144 N.J. Super. 268 (App. Div. 1976), app. dism. 74 N.J. 256 (1977), where the State negligently failed to furnish defendant with a tape of an interview between a deputy attorney general and a witness containing the details of a promise or hope of leniency, we set forth the standard for dealing with instances of evidence lost or destroyed by virtue of mistake.
Before a dismissal of an indictment is warranted in such circumstances, we believe there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process, or an egregious carelessness or prosecutorial excess tantamount to suppression. In the absence of these conditions, the right of the public to its day in court in the prosecution of properly found indictments should be forfeited only if otherwise there would be manifest and harmful prejudice to defendant. Such is not the case here, a fact properly found by the judge below. [at 282-283]
Application of this standard to the facts of this case leads us to conclude that there is no such basis for reversal.
Having concluded that the State established its good faith, it becomes incumbent for us to determine whether the destroyed evidence prejudiced the defendant. The omitted evidence must be evaluated in the context of the entire record. United States v. Agurs, supra. While the absence of physical evidence may at times make cross-examination more difficult, such difficulties do not necessarily amount to a denial of confrontation as urged by defendant. United States v. Sewar, 468 F.2d 236 (9 Cir.1972), cert. den. 410 U.S. 916, 93 S.Ct. 972, 35 L.Ed.2d 278 (1973).
Here, the State's testimony established all of the essential elements of the crime, including facts relevant to the missing items involved. While defendant denied that she threw the black purse out the window and denied that it was hers, the existence or nonexistence of the items of evidence did not preclude her defense of the case. The defense of nonownership and the denial of guilt would be the same with or without the physical existence of these items of evidence.
*157 Contrary to defendant's contention that without the black purse and its contents she could not know the exact size of each item and thus was unable to ascertain whether the drugs and paraphernalia could fit within the purse, the defense could easily have established the size of the various items by cross-examination of the police officers, had it chosen to do so. Detailed testimony was adduced from the officers concerning the size, shape and color of the purses. However, no attempt was made by defendant to ascertain the size of the package of marijuana or of the implements. Of course, defendant knew the shape and size of the manila envelope containing the marijuana since she admitted it belonged to her and that she had thrown it out the window. Then, too, she had seen the black purse at headquarters and later said it belonged to Larry Davis.
As for defendant's argument that without the blue purse she could not explore the possibility that the police had confused that purse with the black purse, we agree with the State's position that this line of defense was aided by the absence of these exhibits. Aside from color differences, the purses were seized at different locations and at different times. Destruction of the evidence including the police tags and labels made it possible for the defense to suggest to the jury in its summation that the evidence may have been mishandled, misidentified, not found in the alleyway but in the second-floor bedroom and that the black purse did not contain the seven bags of heroin that were testified to if in fact there were bags of heroin.
Defendant further asserts that her ability to contest the source of the purse as coming from her was seriously impaired. However, defendant's brief does not suggest how the presence of the purse would facilitate her doing so.
While the State had the burden to establish defendant's control over the black purse as an essential ingredient of its case, we are satisfied that the State did so beyond a reasonable doubt notwithstanding the absence of the real evidence. We are unable to conclude that the presence of *158 the purses and other items could have been utilized to raise the reasonable doubt required to demonstrate that defendant's right to a fair trial was violated. It is our conclusion that the negligent destruction of the items did not prejudice the defendant and that their absence at trial was incapable of producing an unjust result.
Affirmed.