198 N.J. Super. 21 (1984)
486 A.2d 345
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALBERTO SERRET, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1984.
Decided December 12, 1984.
*23 Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.
David E. Shaver, Assistant Deputy Public Defender, argued the cause for appellant (Joseph H. Rodriquez, Public Defender, attorney; David E. Shaver of counsel and on the brief).
H. Rutherford Livengood, Assistant Essex County Prosecutor, argued the cause for respondent (George L. Schneider, Essex County Prosecutor, attorney; H. Rutherford Livengood, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
This appeal presents the question of whether defendant's constitutional rights of due process and confrontation were violated by reason of the State's failure to preserve physical evidence. In our view, the destruction of the "molotov cocktail" *24 allegedly used by defendant in the attempted arson was not such a violation of defendant's rights, nor were there other trial errors warranting the reversal of the conviction. We affirm.
A two count indictment was returned against defendant charging him with attempted arson contrary to N.J.S.A. 2C:17-1a and N.J.S.A. 2C:5-1 and with unlawful possession of an explosive device contrary to N.J.S.A. 2C:39-4b. At the ensuing jury trial defendant was found guilty on both counts but at sentencing the conviction for unlawful possession of an explosive device was vacated and merged with the conviction for attempted arson.
Testimony disclosed that in the early hours of August 4, 1981 defendant was seen placing a bottle having a wick or cloth on its top in one of the first floor windows of a two and one-half story residential building in Newark, then lighting the cloth or wick and leaving the scene. The flame quickly went out and the witness observed gasoline and cigarette butts inside the bottle. The police were called and later in the morning members of the Fire Department's arson squad commenced an investigation. On the windowsill they found a one-quart beer bottle filled with gasoline, debris, cigarette butts, small rocks, aluminum foil and a partially burned cloth wick in the bottle's neck (the molotov cocktail). The bottle was removed and sent to the laboratory of the Police Department for analysis of its contents. A chromatograph analysis disclosed that the liquid substance was a gasoline fraction of petroleum hydro-carbon distillate. No quantitive analysis as to the percentage of gasoline in the solution was made nor was any examination of the bottle made for fingerprints. The bottle and its contents were returned to the Fire Department offices and kept on a window sill for about two weeks. Considering the bottle and its contents to be dangerous, the fire chief directed that it be disposed of. The liquid was then poured out and the bottle and wick destroyed. Officers who had handled the bottle testified that the liquid smelled like gasoline.
*25 The Police Department chemist testified as to the chromatograph results and identified the liquid in the bottle as gasoline. However, no testimony was offered regarding the nature, accuracy and intricacy of the chromatograph utilized nor was any evidence offered as to the reliability of this testing machine, the methodology followed in its use or the acceptance by the scientific community of gas chromatography as a means of identifying liquid substances.
Defendant asserts error by the trial court in denying his motion to dismiss the indictment because of the State's destruction of the bottle and its contents. He claims the failure to preserve these physical properties precluded him from effectively defending himself in that he was unable to affirmatively utilize potentially exculpatory evidence. Thus his right to due process of law and a fair trial were abridged. Defendant also contends the destruction of this evidence violated his constitutional guarantee of confrontation as it prevented him from meaningfully confronting and examining the chemist who testified to results of the analyses of the contents of the bottle. He further challenges for the first time the admissibility of these test results on the ground that a proper foundation had not been laid as to the reliability of the chemist's procedure and the equipment used. Although not raised below, it is also now asserted the prosecutor in her summation, in attempting to bolster the credibility of a State's witness, improperly made statements not based upon evidence of record.
Specifically, defendant contends that:
1. The trial court erred in denying defendant's motion to dismiss the indictment. Defendant was denied due process of law by the failure of the state to properly collect and preserve critical and potentially exculpatory physical evidence.
2. The State's negligent destruction of the physical evidence and defendant's resulting inability to independently test and examine the physical evidence was a denial of defendant's right to confrontation guaranteed by the Sixth Amendment to the United States Constitution.
3. The State failed to meet the legal criteria codified by Evidence Rule 56 for the admission of scientific evidence. Introduction of the scientific evidence was improper and had the capability of producing an unjust result.

*26 4. The prosecutor improperly bolstered the credibility of a State's witness during summation.
Where there has been a destruction of physical evidence in a criminal case, the judicial inquiry as to any infringement of the defendant's rights must focus upon whether the loss or destruction of the evidence was the consequence of bad faith or connivance on the part of the State and whether there was any resulting prejudice to defendant. As we declared in State v. Washington, 165 N.J. Super. 149, 155 (App.Div. 1979):
Generally, when there has been a loss or destruction of physical evidence in a criminal trial, the court must determine whether defendant has thereby been denied due process and a fair trial. United States v. Picariello, 568 F.2d 222 (1 Cir.1978). To do so, the court must determine (1) whether there was bad faith or connivance on the part of the government and (2) whether defendant was prejudiced by the loss or destruction of the evidence. (citations omitted).
The United States Supreme Court in the recent case of California v. Trombetta, ___ U.S. ___, ___, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 421-422 (1984) addressed this issue in a similar manner, stating:
Given our precedents in this area, we cannot agree with the California Court of Appeal that the State's failure to retain breath samples for respondents constitutes a violation of the Federal Constitution. To begin with, California authorities in this case did not destroy respondents' breath samples in a calculated effort to circumvent the disclosure requirements established by Brady v. Maryland and its progeny. In failing to prserve [sic] breath samples for respondents, the officers here were acting "in good faith and in accord with their normal practices." Killian v. United States, supra [368 U.S. 231], at 242, 7 L.Ed.2d 256, 82 S.Ct. 302 [at 308]. The record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence.
* * * * * * * *
Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. (footnote omitted). To meet this standard of constitutional materiality, see United States v. Agurs, 427 U.S. [97], at 109-110, 49 L.Ed.2d 342, 96 S.Ct. 2392 [2400], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case.
*27 Here, defendant does not claim bad faith in the destruction of the bottle and its contents. However, he asserts prejudice in that the destruction of this evidence precluded him from examining and subjecting the evidence to independent analysis thereby preventing meaningful confrontation and cross-examination of the expert offered by the State. Although the absence of the evidence may have made his cross-examination of the witness more difficult, such difficulties do not necessarily amount to a denial of confrontation. State v. Washington, 165 N.J. Super. at 156. While the cross-examination of this expert was limited to a brief inquiry as to the testing procedure used in chromatography, the absence of the bottle and its contents did not prevent a more searching examination of inadequacies in the procedures utilized by the expert, the reliability of the testing equipment, the acceptability of the test results and the proficiency of the expert in conducting the test. Also, defendant's opportunity to discredit the testimony of the State's expert with respect to his procedures through the testimony of his own expert was not impaired by the inability to inspect the bottle and its contents. Thus, defendant was capable of questioning the test results without resort to the destroyed evidence. We do not read State v. Teare, 135 N.J. Super. 19 (App.Div. 1975) as requiring a different conclusion.
Additionally, we would observe that the constitutional duty to preserve evidence is limited to such evidence as "might be expected to play a significant role in the suspect's defense." California v. Trombetta, ___ U.S. at ___, 104 S.Ct. at 2534, 81 L.Ed.2d, at 422. This materiality standard is met only when the evidence possesses an apparent exculpatory value and is of such a nature that comparable evidence could not be obtained by other means. Ibid. Here, it was not apparent before its destruction that the evidence had any exculpatory value and, while the physical properties were not available after destruction, the methods used in the analyses of the liquid content and *28 the results obtained were subject to examination. Considering the other testimony offered as to the gasoline odor of the liquid in the bottle, this physical evidence likely would have been inculpatory rather than exculpatory. Clearly, the bottle and its contents could not have been expected to play a significant role in defendant's defense. As noted by the trial judge, defendant stood to gain by the inferences which might have been drawn from the State's destruction of the evidence. We therefore conclude that the trial court properly denied defendant's motion for a dismissal of the indictment.
Defendant's further claim that the charge of possession of an explosive device with intent to use it for an unlawful purpose could not be proved without the physical evidence is without merit in view of the testimony establishing defendant's control of the device. State v. Washington, 165 N.J. Super. at 156, 157. Additionally, defendant was sentenced for the crime of attempted arson and not for the unlawful possession of an explosive device, as the latter count was merged with the former.
Finally, the asserted trial errors do not warrant a reversal of the conviction. Defendant's claim that the results of the chromatograph test were improperly admitted was not raised when such testimony was elicited and thus will not now be considered unless the admission constitutes plain error. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). Viewing the case as a whole we cannot say the admission of such evidence prejudicially affected the substantial rights of defendant. Jurman v. Samuel Braen, Inc., 47 N.J. 586, 590 (1966). However, it should be noted that gas chromatography has been considered as an acceptable scientific procedure. See State v. Rypkema, 191 N.J. Super. 388 391 (Law.Div. 1983). Also, while the prosecutor improperly included in her summation comments having no foundation in the evidence, they were *29 not sufficiently harmful as to require a reversal of the conviction and were appropriately cured by the court's instructions.
Affirmed.