THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SERGIO TORRES and MILAGROS GONZALEZ, Appellants.

Third Department, May 6, 1993

### APPEARANCES OF COUNSEL

*Carol M. Dillon,* Amsterdam, for Milagros Gonzalez, appellant.

*Joseph A. Nalli,* Fort Plain, for Sergio Torres, appellant.

*Guy P. Tomlinson, District Attorney* of Montgomery County, Fonda *(Joseph Sise* of counsel), for respondent.

### OPINION OF THE COURT

CREW III, J.

On September 25, 1990, Deputy Sheriff Sharon Buddles, acting as an undercover officer, met defendant Milagros Gonzalez in front of an apartment shared by Gonzalez and defendant Sergio Torres. At that time, according to Buddles, she told Gonzalez that she was looking for someone who could sell her heroin. Gonzalez replied that she did not have any, but that she would have some later that evening.

The following day Buddles, fitted with a body wire, went to defendants' apartment where she found both at home. At that time Buddles purchased two packets of heroin for $60. On October 1, 1990 Buddles, again fitted with a body wire, returned to defendants' apartment where she purchased six packets of heroin for $180. As a consequence, defendants were indicted and charged with two counts of criminal sale of a controlled substance in the third degree, two counts of criminal possession of a controlled substance in the third degree, two counts of endangering the welfare of a child and five counts of unlawfully dealing with a child. Following a jury trial, Torres was convicted of criminal sale of a controlled substance in the third degree (two counts) and unlawfully dealing with a child, while Gonzalez was convicted of criminal sale of a controlled substance in the third degree. Thereafter, County Court sentenced Torres, as a second felony offender, to consecutive prison terms of 8½ years to 17 years on each conviction of criminal sale of a controlled substance in the third degree, and to a concurrent term of 30 days on his conviction of unlawfully dealing with a child. Gonzalez was sentenced to a prison term of 5 to 15 years. Both defendants appeal.

Initially, we reject defendants' contention that the verdict was against the weight of the evidence and/or was not supported by legally sufficient evidence *(see, People v Bleakley,* 69 NY2d 490). Defendants further contend that their convictions

should be reversed and the indictment dismissed because the People failed to preserve a tape-recorded conversation between Buddles and Gonzalez on September 25, 1990, as well as four other tapes of conversations that occurred subsequent to the October 1, 1990 sale.*

It is now axiomatic that where the People are in possession of discoverable material, they are duty bound to preserve such evidence (see, People v Kelly, 62 NY2d 516) and, in the event such evidence is lost or destroyed, sanctions will be imposed (see, supra, at 520). Furthermore, the nature and extent of the sanction will depend upon the degree of the prosecutor's bad faith, the importance of the evidence lost and the evidence of guilt adduced at trial (see, United States v Bryant, 439 F2d 642, 653; People v Close, 103 AD2d 970, 971), and while the form of the sanction is vested in the trial court's sound discretion, the drastic remedy of dismissal should rarely be invoked (see, People v Kelly, supra, at 521).

The defense in this case was one of agency. In that regard, defendants testified that Buddles appeared to them to be addicted, ill and in need of a fix. They testified that they simply acted as Buddles' agent and procured heroin for her from another person. Buddles, on the other hand, testified that, as to the first transaction, the heroin was on the premises and defendants simply retrieved it from another room and sold her two packets. As to the second transaction, Buddles testified that she asked for heroin and was told that defendants only had two packets, but if she would wait a minute, they could get more. When she indicated that the two packets were sufficient, she was told by defendants to wait a minute and they would get more, which they did. With regard to that transaction, Torres testified that he saw a person go by the house who he knew sold heroin and told Buddles to wait a minute, knowing that he could get her additional heroin from that individual. The tape recordings of the two transactions were not wholly audible and what could be heard was not inconsistent with either version of the events, thus posing a substantial credibility issue for resolution by the jury. It is in this context that we must view the September 25, 1990 conversation and the missing tape recording of that conversation.

---

* Defendants made no complaint of the destroyed taped conversations that were made subsequent to the second sale and their arguments in that regard are unpreserved for appellate review (see, CPL 470.05 [2]; People v Jones, 175 AD2d 662, lv denied 78 NY2d 1128).

Buddles testified that she met with Gonzalez in front of her apartment on September 25, 1990 and told her that she was new to the area and was looking to meet someone who could sell her heroin. She further testified that Gonzalez said that "she didn't have any right with her", but that Buddles should stop back later and "we'll have some". Buddles continued that she was told that she should stop back that night because "it was very good stuff and wouldn't be around for long". Gonzalez's version of this meeting differed significantly. She testified that Buddles came to her apartment with a friend named Lily. She further testified that her conversation was only with Lily, who identified Buddles as a sick friend and wanted to know if Gonzalez could get her something. She told Lily that she could not and that Lily then said to Buddles, "Come on, let's go, we try again tomorrow." Torres testified that he saw Lily sometime on September 25, 1990 and she told him that Buddles was not a police woman, that she was simply an addict looking for drugs.

The importance of which of those two versions of the September 25, 1990 meeting is correct is self-evident. Indeed, on summation the People stressed that Gonzalez stated on September 25 that "I'll set you up. We don't have anything right now, but we've got a shipment coming in." And later in the summation: "I ask you when you're considering whether there was an agency in this case, think of the salesman like behavior of both defendants. We've discussed it before * * * On September 25th, Defendant Gonzalez says, 'Come on back. We've got a good product. High quality stuff. It's going to go fast.' "

The importance of the missing tape was not misperceived by County Court. Upon discovering that fact, the court immediately determined to preclude the two officers who monitored that tape recording from testifying as to what they had heard. County Court later determined that, in addition, it would give an adverse inference charge to the jury. The question on this appeal is whether these were sufficient sanctions. We think not.

Initially, we note that the tape did not disappear through neglect or inadvertence. It was deliberately destroyed by personnel of the Sheriff's Department, and while we cannot say that the Deputy Sheriff was motivated by bad faith— indeed he claims he was not—we do not perceive that to be the controlling factor in our determination. As has been aptly

observed, it is not the character of the person suppressing evidence with which we must concern ourselves, but rather the character of the evidence itself *(see, United States v Agurs,* 427 US 97; *People v Saddy,* 84 AD2d 175). As stated in *United States v Agurs (supra,* at 110): "Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it * * * Conversely, if evidence actually has no probative significance at all, no purpose would be served by requiring a new trial simply because an inept prosecutor incorrectly believed he was suppressing a fact that would be vital to the defense. If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor".

In the case at bar, defendants presented a viable defense of agency. Had their version of the September 25, 1990 conversation been corroborated by the missing tape, it would have severely undercut the People's case. However, even assuming that the tape would have corroborated defendants' version, it would not have, ipso facto, demonstrated their innocence and thus this is not an appropriate case for dismissal *(compare, United States v Bryant,* 439 F2d 642, *supra; People v Saddy,* 84 AD2d 175, *supra).* Nevertheless, given the importance of the September 25, 1990 conversation to defendants, we conclude that the only appropriate sanction is the preclusion of all testimony relating to that encounter.

Accordingly, there must be a reversal and a retrial on the remaining charges of the indictment. In light of this determination, we decline to address the remaining arguments advanced by defendants on appeal.

MIKOLL, J. P., YESAWICH JR. and MERCURE, JJ., concur.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Montgomery County for a new trial.