727 A.2d 533 (1998)
320 N.J. Super. 483
STATE of New Jersey, Plaintiff,
v.
Orlando MONTIJO, Defendant.
Superior Court of New Jersey, Law Division, Essex County.
Decided July 2, 1998.
*534 H. Rutherford Livingood, II, Assistant Prosecutor, for plaintiff (Patricia Hurt, Essex County Prosecutor).
Edward A. Berger, Newark, for defendant.
WEISSBARD, J.S.C.
Defendant Orlando Montijo moves to dismiss an indictment charging him with aggravated assault and related weapons offenses due to the State's negligent loss of statements taken from both the victim and an eyewitness, as well as police photographs of the crime scene. The court heard argument and then conducted an evidentiary hearing.
The indictment charges the defendant with an aggravated assault on Heriberto Garcia on May 4, 1997. According to the evidence produced at the hearing, the State alleges that Mr.Montijo shot Mr. Garcia following a physical and verbal confrontation between the two men on a Newark street where both lived. Mr. Garcia's girlfriend, Flor Miranda, was an eyewitness to the events. The testimony established that there had been a confrontation several days earlier in which Garcia and some friends had attacked Mr. Montijo with baseball bats. On the evening of May 4, Garcia and Miranda had returned from a barbeque where Garcia had been drinking. Once again, words passed between Garcia and Montijo as a result of which a fight ensued, lasting about *535 ten minutes. Garcia, who is the bigger man, apparently chased Montijo who fled to his house. According to Miranda, Montijo came out of his house with a gun which he fired four or five times, striking Garcia in the legs. Garcia was taken to University Hospital where he was treated for his injuries.
Detective Penvolpe was assigned to investigate the incident. When he arrived, the initial officer on the scene already had Ms. Miranda in a patrol car. Penvolpe interviewed her briefly, making notes in a small notebook he carried, and then later brought her to headquarters where a formal, detailed, question and answer type sworn statement was taken. The events were then fresh in Ms. Miranda's mind. Penvolpe also went to University Hospital where he interviewed Garcia, again making notes in the same notebook. No formal statement was ever taken from the victim. Photographs were also taken at the scene of the shooting, according to the report filed by the initial officer on the scene.
Subsequently, Penvolpe was transferred from the Detective Bureau. His notebook and the file containing Ms. Miranda's statement cannot now be located. Penvolpe has returned to his old office to look for the file but to no avail. In addition, the photographs cannot be located.
Defendant, as noted, has now moved to dismiss the indictment alleging prejudice from the State's inability to produce the witness statements and photographs. The State responds that the loss of what it concedes to be discoverable material was simply negligent, not intentional, and defendant is not prejudiced thereby since he has made no showing that the statements contained any information that could be used to his advantage at trial, i.e. no demonstration that the statements were in any way inconsistent with the testimony that the witnesses (Mr. Garcia and Ms. Miranda) will likely give at trial or otherwise exculpatory. Further, the State claims, since there has now been a hearing at which Ms. Miranda was compelled to testify and be cross-examined about the events of May 4, defendant is in no worse position and perhaps better offthan if the statements were produced. As to the photos, which presumably show the location of the blood resulting from Mr. Garcia's wounds, the State similarly responds that no prejudice has been demonstrated, or suggested. Both positions have considerable merit. The difficulty comes in balancing the rights involved.
At the outset, it is well to note the fundamental principle that the prosecuting agency must bear whatever consequences properly flow from the loss of evidence by other state agencies, such as the police. State v. Lewis, 137 N.J.Super. 167, 172, 348 A.2d 225 (Law Div.1975). As the court said there, the State as the prosecutorial party "cannot atomize itself" into a myriad of independent agencies and thereby seek to avoid responsibility. The fact that the negligence was that of the police and not that of the prosecutor is of no avail if an accused is thereby deprived of fundamental rights. Nevertheless, the question of what is to be done when evidence is lost is not that simple. Our courts have addressed the issue in related contexts a number of times, although not on facts similar to those presented here.
In State v. Lewis, supra, the court dismissed several counts of an indictment where the State lost documentary evidence essential to the defendant's ability to defend against forgery charges. In State v. Laganella, 144 N.J.Super. 268, 365 A.2d 224 (App.Div.1976), the court held that before dismissal of an indictment is warranted due to the State's inadvertent failure to produce impeaching evidence in a timely fashion,
there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process, or an egregious carelessness or prosecutorial excess tantamount to suppression. In the absence of these conditions, the right of the public to its day in court in the prosecution of properly found indictments should be forfeited only if otherwise there would be manifest and harmful prejudice to defendant.
[Id. at 282-83, 365 A.2d 224.]
Finding an "absence of these conditions" the Appellate Division reversed the dismissal of the indictment.
*536 The court returned to the issue in State v. Washington, 165 N.J.Super. 149, 397 A.2d 1101 (App.Div.1979). There, the police had mistakenly destroyed several items of physical evidence which, the defense contended, impaired its ability to affect the credibility of one or more of the State's witnesses. In evaluating this claim the court adopted the test set out in United States v. Picariello, 568 F.2d 222 (1st Cir.1978), which requires a determination "(1) whether there was bad faith or connivance on the part of the government and (2) whether defendant was prejudiced by the loss or destruction of the evidence." 165 N.J.Super. at 155, 397 A.2d 1101. While noting that "the absence of physical evidence may at times make cross-examination more difficult, such difficulties do not necessarily amount to a denial of confrontation as urged by defendant." Id. at 156, 397 A.2d 1101. The court stated that in order to be sufficiently material to result in prejudice, the evidence "must be useful as to discredit a witness to the point of probably or possibly affecting the result of the trial." Id. at 155, 397 A.2d 1101. Finding that the destruction occurred in good faith, and that the defendant had failed to establish that the missing items "could have been utilized to raise the reasonable doubt required to demonstrate that defendant's right to a fair trial was violated," Id. at 158, 397 A.2d 1101, the court concluded that "the negligent destruction of the items did not prejudice the defendant and that their absence at trial was incapable of producing an unjust result." Id. See also United States v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).
The court reiterated its adherence to the Picariello standard in State v. Serret, 198 N.J.Super. 21, 26-27, 486 A.2d 345 (App.Div. 1984) (quoting from California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984)), further explaining that "the constitutional duty to preserve evidence is limited to such evidence as `might be expected to play a significant role in the suspect's defense.'" "This materiality standard is met only when the evidence possesses an apparent exculpatory value and is of such a nature that comparable evidence could not be obtained by other means." 198 N.J.Super. at 27, 486 A.2d 345. State v. Casele, 198 N.J.Super. 462, 470, 487 A.2d 765 (App.Div. 1985), set out the Picariello standard as a three-pronged test: "(1) whether the evidence was material to the issues of guilt or punishment, (2) whether the defendant was prejudiced by its destruction, and (3) whether the government had acted in bad faith when it destroyed it."
Finally, State v. Peterkin, 226 N.J.Super. 25, 543 A.2d 466 (App.Div.1988), was a case where the court was confronted with the destruction of critical photo identification arrays and a subsequent effort to conceal that loss by the officer involved. The trial court, finding that the lost evidence "had rendered impossible the ability to make an informed and fair judgement concerning the reliability of the identification techniques utilized," dismissed certain counts of the indictment. Id. at 37, 543 A.2d 466. After restating the fundamental precept that dismissal of an indictment is a "draconian remedy" to be employed sparingly, the court concluded that a prosecution "should be aborted only upon a finding that defendants' rights to a fair trial have been irretrievably lost because of the police misconduct committed." Id. at 38-39, 543 A.2d 466. Judge Baime noted that where "potentially exculpatory evidence is permanently lost or destroyed because of law enforcement neglect or oversight, `judges face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed.'" Id. at 41-42, 543 A.2d 466 (quoting California v. Trombetta, supra., 467 U.S. at 486, 104 S.Ct. at 2533, 81 L.Ed.2d at 421). Fashioning an appropriate remedy is difficult, with courts often reduced to an "unpalatable choice" between dismissal of an indictment or suppression of highly probative evidence. Id. at 42, 543 A.2d 466. Applying those principles to the case at hand, the court affirmed the trial court's suppression of the pretrial photographic identification but reversed the dismissal of the indictment counts relating to these identifications. It also remanded for a taint hearing with respect to in-court identifications. In so doing, the court stressed that the initial loss of evidence was negligent perhaps even grossly sobut not intentional, *537 notwithstanding the subsequent cover-up attempt.
Other courts have likewise adopted the view that dismissal of an indictment due to loss of discoverable evidence is a drastic remedy that should be sparingly employed. People v. Torres, 190 A.D. 2d 52, 597 N.Y.S.2d 492, 493 (1993). Dismissal is "the most severe sanction a court can impose; it is to be used with the greatest caution and deliberation." State of Florida v. Westerman, 688 So.2d 979, 980 (Fla.Dist.Ct.App.1997), and "reserved for situations where no other sanction would attain the proper result." People v. Sams, 685 P.2d 157, 162 (Colo.1984).
With these standards in mind we now return to the facts of this case. First, there is no doubt that the loss of the witness statements (including the officer's handwritten notes in that category), as well as the photos, was simply negligent. No reason has been advanced why the material would have been intentionally destroyed in this otherwise routine case. The materiality of the information and the prejudice to the defendant are best considered together. These two prongs are inextricably intertwined in that the more material the evidence, the greater the prejudice, and vice versa. And to repeat, the materiality/prejudice threshold, as explained by the cases discussed above, is a high one. The lost information must be such that it would likely be of significant aid to the defense, which is simply another way of saying that it must possess apparent exculpatory value. Indeed, it must be such that without it a court could confidently say that the defendant's right to a fair trial has been or will be compromised.
Here, we have no idea at all as to the exculpatory value of the statements or the photographs. Thus, we can only engage in a "necessarily speculative analysis." Kelley v. State of Florida, 486 So.2d 578, 582 (Fla.1986). Since the police arrested the defendant based upon the statements of Mr. Garcia and the witness, Ms. Miranda, it is reasonable to conclude that those statements were inculpatory, rather than exculpatory. Thus, we are only left with the possibility of inconsistencies between the details of the version given at the time and those contained in the prospective trial testimony, and even in that regard we have no firmer foundation than speculation. Clearly this is not a case like State v. Lewis, supra, (loss of original documents in forgery case) or State v. Hunt, 184 N.J.Super., 304, 306-09, 445 A.2d 1186 (Law Div.1981) (loss of tape containing evidence supporting defendant's contention of withdrawal from conspiracy). See also People v. Young, 177 A.D.2d 609, 576 N.Y.S.2d 316, 317 (1991) (destruction of alleged burglar tools results in dismissal of certain counts since "physical production of the tools in question was necessary to resolve the issue of their capability of being used as instruments to effect a burglary"); State of Florida v. Counce, 392 So.2d 1029 (Fla.Dist.Ct.App.1981) (loss of beer bottle with gasoline-like liquid and charred paper found at scene of arson denied defendant due process and called for dismissal of charges). And with respect to impeaching information, materiality requires that the evidence be so useful as to "discredit a witness to the point of probably or possibly affecting the result of the trial." State v. Washington, supra, 165 N.J.Super. at 155, 397 A.2d 1101 (citing United States v. Smith, 480 F.2d 664, 668 (5th Cir.1973) and Link v. United States, 352 F.2d 207, 212 (8th Cir.1965)). That conclusion simply cannot be reached in this case with anything approaching the required degree of certainty. Suppression of the witness testimony would be as unwarranted under these circumstances as dismissal of the indictment, for the same reasons. Indeed, it would be tantamount to dismissal. While the court unquestionably has broad power to fashion a remedy where discovery rules are violated, State v. Laganella, supra, 144 N.J.Super. at 281, 365 A.2d 224; State v. Scherzer, 301 N.J.Super. 363, 417, 694 A.2d 196 (App.Div.1997), the sanction of preclusion is itself a "drastic remedy," whether it be applied against the defense or the State. State v. Burnett, 198 N.J.Super. 53, 61, 486 A.2d 846 (App.Div.1984). "The determination of what is an appropriate sanction for the destruction of discoverable evidence is committed to the trial court's sound discretion, and while the degree of prosecutorial fault may be considered, the courts' attention *538 should focus primarily on the overriding need to eliminate prejudice to the defendant." People v. Riviere, 173 A.D.2d 871, 571 N.Y.S.2d 75, 76 (1991). In selecting a remedy the court "should consider the totality of circumstances and determine whether a particular sanction will serve `the dual purposes of protecting the integrity of the truth-finding process and deterring the prosecutor and the police from destroying material evidence.' " People v. Sams, supra., 685 P.2d at 162. (suppressing evidence of pre-trial identifications and instructing jury as to prior mis-identification due to loss of photo arrays). Of course, in determining whether the loss has resulted in prejudice to the defendant, the burden of demonstrating a lack of prejudice is upon the State. State of Florida v. Sobel, 363 So.2d 324, 327 (Fla.1978) (loss of unintelligible tape recording resulted in no prejudice to defendant), notwithstanding that there is no presumption of prejudice inuring to the benefit of the defendant. Kelley v. State, supra, 486 So.2d at 581 (Fla.1986) (quoting Salvatore v. State, 366 So.2d 745, 751 (Fla.1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979)).
The court is not unsympathetic to the plight of the defendant and has considered other possible remedies, such as permitting the deposition of the witness whose statement was lost or permitting an adverse inference to be drawn against the State with respect to the contents of the statement, i.e. that a jury might infer that the statement was inconsistent with the trial testimony. City of Bismarck v. Holden, 522 N.W.2d 471, 474 (N.D.1994); People v. Torres, supra, 597 N.Y.S.2d at 494. With respect to the former, the defense has now had the equivalent of a deposition by having the opportunity to hear the witnesses' version in open court at the hearing and to cross-examine them. The latter approach, permitting an adverse inference, would simply perpetuate the fiction that the statement was in fact exculpatory, a conclusion which is not only unknowable but questionable at best. Of course, the defendant will be permitted at trial to elicit the facts concerning the loss of these items and to argue to the jury whatever may be an appropriate conclusion from that loss. People v. Sams, supra, 685 P.2d at 163.
The same must be said of the photographs. There is no question that Mr. Garcia was shot on the street. At this time there does not appear to be any significant issue as to his exact position, which would be elucidated by the pictures. Fuller testimony at trial may result in a conclusion that the photographs would have been particularly significant. Here again, we simply do not know enough about what the photos depict to draw any other present conclusion as to their materiality.
In the end, though highly regrettable, the court concludes that the loss of the statements and photos, under the circumstances of this case, warrants no sanction at this time. The defense is no worse off than if there had never been a formal statement or photographs taken, a situation which is quite common in similar cases. If events at trial should reveal a different scenario, demonstrating actual prejudice to the defendant, the matter can be revisited. At this time, however, the motion is denied.