NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4776-15T1

STATE OF NEW JERSEY,

 Plaintiff-Appellant,

v.

WILLIAM GRAHAM, III,

 Defendant-Respondent.
________________________________

 Submitted May 3, 2017 – Decided June 29, 2017

 Before Judges Manahan and Lisa.

 On appeal from Superior Court of New Jersey,
 Law Division, Gloucester County, Indictment
 No. 15-01-0023.

 Sean F. Dalton, Gloucester County Prosecutor,
 attorney for appellant (Douglas B. Pagenkopf,
 Assistant Prosecutor, on the brief).

 Respondent has not filed a brief.

PER CURIAM

 By leave granted, the State appeals from an order suppressing

evidence after a finding by the Law Division that the State

engaged in bad faith for failure to provide requested discovery.

We reverse and remand.
 On July 2, 2014, defendant William Graham, III, was stopped

by Woodbury City police pursuant to an investigation of alleged

controlled dangerous substances (CDS) distribution. Defendant was

not arrested, but his car was impounded in the secured, locked

rear garage behind the Woodbury City Police Department (WCPD).

The WCPD station, including the garage, was monitored by a 24-hour

surveillance system. Although no camera was installed inside the

garage, the outside of the garage was monitored. Once defendant's

vehicle was secured in the garage, both the vehicle and the garage

were locked and the ignition key was placed inside a secured

evidence mailbox.

 The next day, the police applied for a search warrant, which

was issued.1 The search of the vehicle yielded a CDS, which formed

the basis for defendant's subsequent arrest. During the arrest

process, defendant accused the police of planting drugs in his car

while it was impounded.

 Defendant was charged in Indictment 15-01-0023 with third-

degree possession of heroin, N.J.S.A. 2C:35-10A(1) (count one);

third-degree possession with intent to distribute heroin in a

quantity less than one-half ounce, N.J.S.A. 2C:35-5B(3) (count

1
 The record does not reveal the basis for the issuance of the
search warrant. Defendant did not challenge the search pursuant
to the warrant.

 2 A-4776-15T1
two); third-degree possession with intent to distribute heroin

while within 1000 feet of a school zone, N.J.S.A. 2C:35-5(a),

N.J.S.A. 2C35-7 (count three); and fourth-degree throwing bodily

fluid at a police officer while in the performance of his or her

duties, N.J.S.A. 2C:12-13 (count four).

 On March 15, 2015, defendant made a request for discovery.

Specifically, defendant requested video surveillance of the garage

for the period when his car was impounded. Two weeks later, the

State responded to defendant's request noting that no video

surveillance footage was available for the relevant time period.

 On January 8, 2016, defendant made a second request for

discovery demonstrating whether the surveillance system used by

the WCPD had been repaired or replaced. A month later, the State

provided a police report prepared by Sergeant Erik Lokaj that

noted several attempts to copy the surveillance footage. However,

the attempts were unsuccessful due to an unidentified issue with

the system.

 Defendant filed a motion to compel discovery on March 14,

2016. During the hearing, Lokaj testified that a request for a

copy of the video footage was made to Captain Thomas Ryan (now

Chief Ryan), who was the primary officer responsible for accessing

video surveillance.

 3 A-4776-15T1
 Ryan testified that he was unable to recall if he received

the request, but did recall attempts to recover the video. The

chief stated that the WCPD did not have any standard operating

procedures requiring recording or preservation of video

surveillance of impounded vehicles and, despite numerous attempts

to recover the footage, the video was no longer available. Ryan

further testified that the system used was "antiquated and old,"

and that the system would record new footage over existing footage

approximately every two months.

 On May 31, 2016, the judge placed his decision on the record.

The judge found that Ryan's testimony regarding the automatic re-

looping was at odds with Lokaj's report. Specifically, the judge

noted the initial reason given by the police for its failure to

provide the surveillance was a system malfunction. Additionally,

the judge pointed to Ryan's testimony that explained when an

arrestee accuses the police of planting evidence in an impounded

car, the police "100%" should preserve the footage. The judge

held that because the police did not follow their own procedures

and protocol for preserving video evidence, the WCPD acted in "bad

faith." The judge granted defendant's motion to compel discovery

and, as a sanction for the State's inability to comply, suppressed

the evidence found in the truck. This appeal followed.

 The State raises the following points on appeal:

 4 A-4776-15T1
 POINT I

 THE TRIAL COURT ERRONEOUSLY DETERMINED A BRADY
 V. MARYLAND2 VIOLATION ON BEHALF OF THE
 PROSECUTION FOR FAILING TO PROVIDE VIDEO
 SURVEILLANCE WHEN THERE WAS NO WRITTEN POLICY
 FOR OBTAINING THE VIDEO, NUMEROUS TECHNICAL
 ISSUES WITH THE VIDEO SYSTEM AND AN AUTOMATIC
 RELOOPING OF THE VIDEO SYSTEM MONTHS BEFORE
 THE REQUEST WAS MADE BY DEFENDANT-RESPONDENT.

 A. The [p]rosecutor and [p]olice did
 not act in bad faith because there
 was no written policy or procedure
 for the recording of video
 surveillance of the rear garage for
 the Woodbury City Police
 Department, the video system was
 constantly broken and the video
 system automatically recycled over
 itself within sixty-seven (67) to
 seventy-six (76) days after
 [d]efendant-[r]espondent's arrest.

 B. The [t]rial [c]ourt erred in
 analyzing whether a due process
 violation existed by failing to
 address the two additional
 Hollander factors.

 POINT II

 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN
 SUPPRESSING ALL EVIDENCE OBTAINED IN THE
 SEARCH OF DEFENDANT-RESPONDENT'S VEHICLE AS A
 REMEDY FOR THE LOST VIDEO SURVEILLANCE. []

 Our standard of review for an order to suppress evidence by

a trial court is limited. State v. Gamble, 218 N.J. 412, 424-25

2
 Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215
(1963).

 5 A-4776-15T1
(2014). We give "deference to those findings of the trial judge

which are substantially influenced by his opportunity to hear and

see the witnesses and to have the 'feel' of the case, which a

reviewing court cannot enjoy." State v. Johnson, 42 N.J. 146, 161

(1964). If we are satisfied that the trial court's factual

findings could reasonably have been reached on sufficient,

credible evidence present in the record, those findings are binding

on appeal. Gamble, supra, 218 N.J. at 424. Our review of the

trial court's application of the law to the facts, of course, is

plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

 The State first argues that the failure to preserve the

surveillance evidence requested by defendant was due to a system

malfunction and the automatic re-loop of the video. As such,

there was no bad faith on the part of the WCPD. Additionally, the

State argues that since the WCPD had no written policy for

preserving surveillance video, the judge's basis for suppressing

the evidence, i.e., failure of the police to follow that policy,

was erroneous. Finally, the State argues defendant was not

prejudiced because there was no apparent exculpatory value to the

surveillance footage.

 "[T]he Constitution guarantees criminal defendants 'a

meaningful opportunity to present a complete defense.'" Crane v.

Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2141, 2146, 90 L. Ed. 2d

 6 A-4776-15T1
636, 645 (1986) (internal citations omitted). The withholding of

material evidence favorable to a defendant is a denial of due

process and the right to a fair trial, regardless of the good

faith or bad faith of the prosecution. Brady, supra, 373 U.S. 83,

83 S. Ct. 1194, 10 L. Ed. 2d 215. Accordingly, the prosecutor is

constitutionally required to disclose information within the

custody or control of the prosecutor that is exculpatory and

material to the issue of guilt or punishment. Ibid.

 Such evidence is material "if there is a reasonable

probability that, had the evidence been disclosed to the defense,

the result of the proceeding would have been different." Strickler

v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed.

2d 286, 301 (1999) (citing United States v. Bagley, 473 U.S. 667,

682, 105 S. Ct. at 3383, 87 L. Ed. 2d at 494); see also N.J.R.E.

401 (defining "relevant" evidence as "[e]vidence having a tendency

in reason to prove or disprove any fact of consequence to the

determination of the action"). A "reasonable probability" is one

"sufficient to undermine confidence in the outcome." Bagley,

supra, 473 U.S. at 682, 105 S. Ct. at 3383, 87 L. Ed. 2d at 494.

 Thus, in order to establish a Brady violation, the defendant

must show: the prosecutor failed to disclose the evidence, the

evidence was of a favorable character to the defendant, and the

evidence was material. State v. Parsons, 341 N.J. Super. 448, 454

 7 A-4776-15T1
(App. Div. 2001) (internal citations omitted). A Brady violation

therefore occurs even where the evidence is not directly

exculpatory, but rather "upon the suppression of evidence which

is reasonably calculated to lead to evidence impugning the

credibility of the State's witnesses." State v. Laganella, 144

N.J. Super. 268, 282 (App. Div. 1976) (citing State v. Taylor, 49

N.J. 440, 447-48 (1967); State v. Blue, 124 N.J. Super. 276 (App.

Div. 1973)).

 In order to establish a violation of due process when evidence

is no longer available, a defendant must show that the evidence

had "an exculpatory value that was apparent before [it] was

destroyed" and that "the defendant would be unable to obtain

comparable evidence by other reasonably available means." Cal.

v. Trombetta, 467 U.S. 479, 489, 104 S. Ct. 2528, 2534, 81 L. Ed.

2d 413, 422 (1984). If a defendant cannot establish that the lost

evidence had "apparent" exculpatory value and can show only that

the evidence was "potentially" useful or exculpatory, then the

defendant can show a due process violation by establishing that

the evidence was destroyed in bad faith. Arizona v. Youngblood,

488 U.S. 51, 57-58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281, 289

(1988); see State v. Reynolds, 124 N.J. 559, 569 (1991) (rejecting

Brady claim because the destroyed tapes in issue "did not possess

 8 A-4776-15T1
any apparent exculpatory value, and because their destruction did

not involve bad faith.").

 Prosecutors have a duty to preserve potentially exculpatory

evidence on behalf of criminal defendants. Trombetta, supra, 467

U.S. at 486-87, 104 S. Ct. at 2532-33, 81 L. Ed. 2d at 420-21.

The State's duty to preserve evidence is limited to evidence that

"might be expected to play a significant role in the suspect's

defense. . . . [E]vidence must both possess an exculpatory value

that was apparent before the evidence was destroyed, and be of

such a nature that the defendant would be unable to obtain

comparable evidence by other reasonably available means." Id. at

488-89, 104 S. Ct. at 2534-35, 81 L. Ed. 2d at 422-23. In

Youngblood, supra, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281,

the Supreme Court expressly limited "the extent of the police's

obligation to preserve evidence to reasonable bounds and

confine[d] it to cases in which the police themselves by their

conduct indicate[d] that the evidence could form a basis for

exonerating the defendant." Id. at 58, 109 S. Ct. at 337, 102 L.

Ed. 2d at 289.

 This court has drawn the distinction between potentially

useful evidence and exculpatory evidence. George v. City of

Newark, 384 N.J. Super. 232, 243 (App. Div. 2006) (quoting

Youngblood, supra, 488 U.S. at 57, 109 S. Ct. at 337, 102 L. Ed.

 9 A-4776-15T1
2d at 289). In George, we held that "a failure to preserve

potentially useful evidence" requires a finding of bad faith on

the part of the State. Ibid.

 We conclude the nature of the evidence in the matter before

us, a video of the exterior of the garage in which the vehicle was

stored, does not constitute evidence that possessed an apparent

exculpatory value. State v. Mustaro, 411 N.J. Super. 91, 102

(App. Div. 2009) (quoting Trombetta, supra, 467 U.S. at 489, 104

S. Ct. at 2534). The video would have presumably depicted whether

anyone entered and exited the garage without depiction of what may

have occurred inside the garage. At best, the video would have

been of potential use to defendant rather than evidence that, had

it been available, would have had a material impact on the case's

outcome. See State v. Robertson, 438 N.J. Super. 47, 67 (App.

Div. 2014). Thus, bad faith must be established to sustain a due

process violation.

 The defendant bears the burden of proving bad faith.

Youngblood, supra, 488 U.S. at 58, 109 S. Ct. at 337, 102 L. Ed.

2d at 289. We have suggested that "bad faith" might apply to

destruction that occurred: "in a calculated effort to circumvent

the disclosure requirements," as in Brady, supra, 373 U.S. at 87,

83 S. Ct. at 1196-97, 10 L. Ed. 2d at 218; when there was an

"allegation of official animus towards" the defendant; or when

 10 A-4776-15T1
there was "a conscious effort to suppress exculpatory evidence."

State v. Serret, 198 N.J. Super. 21, 26, (App. Div. 1984) (quoting

Trombetta, supra, 467 U.S. at 488, 104 S. Ct. at 2533, 81 L. Ed.

2d at 421-22).

 In State v. Carter, 185 N.J. Super. 576 (App. Div. 1982), a

case involving the suppression of exculpatory evidence, we

concluded that even if actual intent to deceive was not present,

"egregious carelessness" would warrant suppression. Id. at 580.

We defined "egregious" as "conspicuously bad, flagrant." Id. at

581.

 Here, the judge found that the police failed to adhere to

their own policy by ensuring the video system was in operating

order and preserving the video. The judge held that the police

conduct in not following "the guidelines and protocols in making

a copy of the video[,]" though not "necessarily with knowledge[,]"

was "a mistake" that constituted a "show of bad faith."

 The State, as noted, argues that the judge erroneously

concluded that there was a "policy" relative to the recordation

and preservation of the garage video system. We reject that

argument. While there may not have been a "written" policy in

existence, there was a pattern and practice employed by the WCPD

of preserving the videos of the lobby of the police department

employed for internal affairs investigations. The lobby video

 11 A-4776-15T1
system was the same as the garage video system. The chief further

conceded that when an allegation such as that made by defendant

was brought to the attention of the police, the video should have

been preserved. However, while we agree with the finding on the

"policy" score, we disagree that the circumstances which gave rise

to the unavailability of the video sustain a finding of bad faith

as a matter of law.

 Notably, as the judge concluded, there was no evidence of

malice or intentional efforts by the WCPD to destroy evidence.

Serret, supra, 198 N.J. Super. at 26. Also, there was no evidence

that the unavailability of the video was premised on "egregious

carelessness." Carter, supra, 185 N.J. Super. at 581. To the

point, the judge found that the loss or destruction of the evidence

sought by defendant was the product of a "mistake" by the WCPD;

conduct that is not consonant with "bad faith" as the term is

commonly defined by federal and state decisions.

 In sum, we discern no due process violation. Defendant has

not established that the video, if recorded and preserved, would

have had "apparent" exculpatory value. Reynolds, supra, 124 N.J.

at 569. Nor has defendant met his burden to demonstrate bad faith.

Youngblood, supra, 488 U.S. at 58, 109 S.Ct. at 337, 102 L. Ed.

2d at 289.

 12 A-4776-15T1
 Notwithstanding our rejection of a due process violation, we

next address the issue of the failure of the State to provide

requested discovery. Rule 3:13-3 imposes obligations upon the

State to preserve and produce evidence to a defendant. Consistent

with that Rule, the State was obligated to respond to defendant's

requests for the video by preserving the video or by informing

defendant that there was no video available. Although it is

unclear from the record whether there was an available video, the

State exercised custody and control of the video surveillance

system and the failure to respond to or comply with defendant's

request must subject it to an appropriate sanction.

 Rule 3:13-3(f) provides for sanctions for non-compliance:

 If at any time during the course of the
 proceedings it is brought to the attention of
 the court that a party has failed to comply
 with this rule or with an order issued
 pursuant to this rule, it may order such party
 to permit the discovery of materials not
 previously disclosed, grant a continuance or
 delay during trial, or prohibit the party from
 introducing in evidence the material not
 disclosed, or it may enter such other order
 as it deems appropriate.

 The judge concluded the State violated its discovery

obligation; the sanction for which was suppression of the evidence

seized from the motor vehicle. We hold the suppression of the

evidence obtained pursuant to an unchallenged search warrant, with

its cloak of presumed validity, State v. Kasabucki, 52 N.J. 110,

 13 A-4776-15T1
122-23 (1968), is a remedy unsuited for the discovery violation

in this case.

 We are informed by our Supreme Court's decision in State v.

Dabas, 215 N.J. 114 (2013), which involved a post-indictment

discovery violation by destruction of interrogation notes. The

Court held that an adverse-inference charge was the appropriate

remedy for the destruction. Id. at 140. The Court noted that

"balancing the scales required the court to instruct the jury that

the State had a duty to produce" the notes and that the jury "was

permitted to draw an inference that the contents of the notes were

unfavorable to the State." Id. at 141.

 In accord with Dabas, upon remand and upon request from

defendant, the court should instruct the jurors that they may draw

an adverse-inference relative to the discovery violation.

 Reversed and remanded. We do not retain jurisdiction.

 14 A-4776-15T1