NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1262-15T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

RORY EDWARD TRINGALI,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 28, 2017**
>
> **APPELLATE DIVISION**

Argued June 6, 2017 — Decided June 28, 2017

Before Judges Reisner, Koblitz and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 11-04-0030.[1]

Joseph Daniel Remy, Deputy Attorney General, argued the cause for appellant (Christopher S. Porrino, Attorney General, attorney; Mr. Remy and Marie G. McGovern, Deputy Attorney General, of counsel and on the brief).

Lawrence A. Leven argued the cause for respondent.

The opinion of the court was delivered by

REISNER, P.J.A.D.

---

[1] The orders on appeal list the wrong indictment number, 08-03-0037. That 2008 indictment was dismissed with the State's consent.

The State appeals from an April 23, 2015 order dismissing the indictment, and from an October 7, 2015 order denying its motion to supplement the record.

The trial court dismissed, on jurisdictional grounds, an indictment charging defendant with disrupting or impairing computer services, N.J.S.A. 2C:20-25(b), impersonating another for the purpose of obtaining a benefit for himself or injuring another, N.J.S.A. 2C:21-17(a)(1), and conspiring to commit those offenses. The court later denied the State's motion to supplement the record with information concerning a civil case relating to the same events.

The State presents us with the following points of argument:

POINT I

WHILE THE TRIAL COURT INITIALLY STATED THE CORRECT PRINCIPLES OF LAW REGARDING TERRITORIAL JURISDICTION, IT ERRED IN REQUIRING A DIRECT NEXUS TO NEW JERSEY IN ISSUING ITS CONCLUSIONS OF LAW, THEREBY CONTRAVENING THE PLAIN WORDING OF N.J.S.A. 2C:1-3(G)

POINT II

EVEN IF THE DIRECT NEXUS ANALYSIS WAS CORRECTLY APPLIED, THE STATE WOULD HAVE JURISDICTION OVER THE INDICTED OFFENSES

POINT III

THE COURT ERRED IN NOT ALLOWING THE STATE TO SUPPLEMENT THE RECORD WITH EVIDENCE OF

PERJURIOUS AFFIDAVITS SUBMITTED BY THE DEFENDANT

According to the State's evidence, defendant, acting in Florida, caused a series of "spam" attacks to be made on a Utah website that was an integral part of the victim's New Jersey-based internet business, causing the business to incur over $100,000 in damages. The State also produced evidence that defendant engineered the spam attacks in part to exact vengeance on the New Jersey resident who operated the internet business. We hold that, as to both computer criminal activity and impersonation, the harmful result to the victim is an "element" of the offense, within the meaning of the territorial jurisdiction statute. N.J.S.A. 2C:1-3(a)(1) and -3(g). Because the State produced some evidence that the New Jersey resident, and the New Jersey corporation he operated, suffered harm in this State which was an element of each computer crime statute, New Jersey has territorial jurisdiction to prosecute defendant for those offenses. Accordingly, we reverse the April 23, 2015 order dismissing counts two and three of the indictment and we remand this matter to the trial court.

Because the parties neither briefed nor argued the section of the territorial jurisdiction statute concerning conspiracy, N.J.S.A. 2C:1-3(a)(3), we do not address the dismissal of count one of the indictment. We remand that issue to the trial court

3                                                                    A-1262-15T1

for further briefing and reconsideration in light of this opinion. In connection with that aspect of the remand, the State may submit to the trial court the materials which were the subject of its motion to supplement the record.[2]

I

Based on the following evidence, in 2011 a grand jury indicted defendant on three counts: (1) second-degree conspiracy, N.J.S.A. 2C:5-2; (2) second-degree computer criminal activity, N.J.S.A. 2C:20-25(b) and N.J.S.A. 2C:2-6; and (3) second-degree impersonation, N.J.S.A. 2C:21-17(a)(1) and N.J.S.A. 2C:2-6.

The State presented testimony from one witness, Christina McCarthy, a detective with the Division of Criminal Justice (DCJ). McCarthy based her testimony on information she learned during a conference call with other detectives and two individual victims, Michael Moreno and Justin Williams. The State also presented defendant's statement, made to DCJ investigators after his arrest.

We begin by summarizing McCarthy's grand jury testimony. Moreno is a resident of New Jersey and was an owner of a company

---

[2] Defendant's argument concerning the timeliness of the State's appeal is without merit and does not warrant discussion. R. 2:11-3(e)(2). We decline to address defendant's speedy trial argument, because it was not raised in the trial court and was not the subject of a cross-appeal. See State v. Robinson, 200 N.J. 1, 19-20 (2009); State v. Eldakroury, 439 N.J. Super. 304, 307 n.2 (App. Div.), certif. denied, 222 N.J. 16 (2015).

called MedPro, Inc. (MedPro). Williams is a resident of Utah and owns a company called Physicians Information Services. The men were in a business relationship in which Moreno sold cosmetic lasers and Williams fulfilled the orders they received.

Moreno and Williams told the DCJ detectives that MedPro's email server received a large number of undeliverable email messages concerning emails that MedPro had not sent. This meant that someone was sending emails from MedPro's email address to email addresses that did not exist. As a result, the emails were returned to MedPro as undeliverable. In some instances, MedPro received as many as 100 undeliverable emails per minute.

Other emails were sent to actual email addresses, and included a link to MedPro's website. The emails impersonated the identity of Moreno's business, in that they appeared to come from "Sales@MedProOnline.com." Because many of the recipients had no business to conduct with MedPro and correctly viewed the emails as spam, they complained to MedPro or its website manager that the emails were unwelcome. One individual who received the spam emails both complained to MedPro and sent the emails to DCJ investigators.

Due to all of the spam messages that appeared to be coming from MedPro, companies that monitor spam messages stopped internet traffic from going to MedPro's website. In fact, MedPro's host company, ABI, took MedPro offline to protect the company.

MedPro's email provider, Network Solutions, shut down MedPro's email, just as ABI took the website offline.

MedPro did not have a physical store, so all of its business came from the website or email. In an effort to rectify the situation, MedPro changed its URL address, but the spam messages continued three more times, attacking each of the new websites. The fourth and final attack took place on February 2, 2007. The cost of changing URLs and other damages exceeded $100,000.

During the conference call with McCarthy and the other DCJ investigators, Moreno and Williams identified Rory Tringali, from Miami Beach, Florida, as the suspected perpetrator. Tringali was a former business partner of Moreno and Williams, but he eventually became their competitor in selling cosmetic lasers.

After the execution of a search warrant at his Florida apartment, defendant was arrested and gave a statement to two DCJ investigators. Defendant's statement constituted evidence that he had a powerful motive to harm his former partners, including "Mike Moreno." Defendant told the investigators that his former partners took over websites that he believed belonged to him, including the MedPro.com website, and then unfairly competed with his laser sale business. To put an end to what he believed was the misuse of "his" websites, defendant paid the webmaster to take down those websites, including the MedPro.com website. Defendant

also admitted knowing that his former partners created new websites, which were then the victims of "massive" spam attacks. Defendant also made statements that could reasonably be construed as admitting his knowledge that the attacks did "huge" damage to the victims' business.

Defendant initially denied that he was behind the spam attacks. However, later in his statement, he admitted that he conspired with a computer-savvy neighbor, Matt Wilner, to launch spam attacks on the MedPro.com website and several other websites being used by his former partners. According to McCarthy's grand jury testimony, Wilner was later arrested, pled guilty, and admitted that defendant paid him to attack the websites.

In moving to dismiss the indictment, defendant submitted evidence that MedPro's website domain (MedPro.com) and email server were actually owned by Brooke Horan, a Utah resident, although Moreno's New Jersey business, MedPro, used that website to sell lasers to its customers. Defendant contended that defendant's cyberattack targeted the website and the server, rather than directly targeting MedPro.

II

In dismissing the indictment, the trial judge considered the Supreme Court's recent holding that territorial jurisdiction requires more than a connection between a defendant's New Jersey

"status" or "attendant circumstances" occurring in New Jersey. State v. Sumulikoski, 221 N.J. 93, 102-03 (2015). "As the language of N.J.S.A. 2C:1-3 makes clear, . . . the various methods that allow for jurisdiction in a criminal case all require a direct nexus to New Jersey." Sumulikoski, supra, 221 N.J. at 102. Relying on State v. Streater, 233 N.J. Super. 537, 543 (App. Div.), certif. denied, 117 N.J. 667 (1989), the judge recognized that a direct nexus would consist of evidence that either the criminal conduct or its result occurred in New Jersey.

The judge reasoned that, because defendant had the spam sent from outside New Jersey and shut down a Utah-based website, "and [because] there is no direct nexus to New Jersey regarding any conduct or results of the offenses charged," New Jersey had no territorial jurisdiction to prosecute defendant. According to the judge's analysis, the fact that a web-based New Jersey business depended on the Utah-based website, and the New Jersey business was harmed, did not suffice to confer jurisdiction on this State to prosecute defendant. We conclude that the judge took too narrow a view of the evidence and misapplied the pertinent statutes.

A grand jury may base an indictment on the evidence the State has produced, as well as any reasonable inferences that may be drawn from that evidence. State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 27 (1984). In a grand jury proceeding, hearsay is

admissible. State v. Ferrante, 111 N.J. Super. 299, 304-05 (App. Div. 1970). In considering a motion to dismiss an indictment, the court should consider whether "there is some evidence establishing each element of the crime[,]" and should view that evidence in the light most favorable to the State. State v. Morrison, 188 N.J. 2, 12-13 (2006).

A trial court should only dismiss an indictment on the "clearest and plainest" grounds and only when it is clearly defective. Trade Waste Ass'n, supra, 96 N.J. at 18-19. We review a trial court's dismissal of an indictment for abuse of discretion. State v. Gruber, 362 N.J. Super. 519, 527 (App. Div.), certif. denied, 178 N.J. 251 (2003). However, if the judge's decision rests on the interpretation of a statute, our review is de novo. Ibid.

In this case, the legal issues can be resolved by comparing our State's statute concerning territorial jurisdiction with the pertinent computer-crime offenses charged in the indictment. In pertinent part, the jurisdiction statute provides:

> a. Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:
>
> > (1) Either the conduct <u>which is an element of the offense</u> or the result

which is such an element occurs within the State;

(2) Conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit a crime within the State;

(3) Conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;

. . . .

g. When the result which is an element of an offense consists of inflicting a harm upon a resident of this State or depriving a resident of this State of a benefit, the result occurs within this State, even if the conduct occurs wholly outside this State and any property that was affected by the offense was located outside this State.

[N.J.S.A. 2C:1-3(a), (g) (emphasis added).]

As noted in the emphasized portions, to confer jurisdiction under subsection (a)(1), either the conduct or the harmful result of the conduct must be "an element" of the offense with which a defendant is charged, and under subsection (g) the harmful result must likewise be an element. Ibid. In turn, "element" is defined in the Criminal Code as:

h. "Element of an offense" means (1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as

10

(a) Is included in the description of the forbidden conduct in the definition of the offense;

(b) Establishes the required kind of culpability;

(c) Negatives an excuse or justification for such conduct;

(d) Negatives a defense under the statute of limitations; or

(e) Establishes jurisdiction or venue;

[N.J.S.A. 2C:1-14(h).] [3]

For purposes of territorial jurisdiction, the State must prove that defendant's conduct or the result of that conduct occurred in New Jersey. "[T]o meet the requirement of territorial jurisdiction, the State must offer proof of 'conduct' or 'result,' as defined in N.J.S.A. 2C:1-3, but cannot rely on relevant attendant circumstances." Sumulikoski, supra, 221 N.J. at 103. Thus, for example, a teacher who engaged in sexual conduct with a student while on a school trip to Germany, cannot be prosecuted

---

[3] Territorial jurisdiction is, itself, an element of an offense, without which the State cannot prosecute a crime here. State v. Denofa, 187 N.J. 24, 36 (2006). However, it is a non-material element that need not be submitted to the jury unless there is a factual dispute about whether the crime occurred in New Jersey. Id. at 38, 38 n.6. A "[m]aterial element" is an element "that does not relate exclusively to . . . jurisdiction . . . or to any other matter similarly unconnected with (1) the harm or evil, incident to conduct, sought to be prevented by the law defining the offense . . . ." N.J.S.A. 2C:1-14(i).

for that crime in New Jersey, even though "attendant circumstances" such as the teacher's supervisory status or the student's underage status would be elements of the crime.  Id. at 95-96.

Applying those principles, we first conclude that there is jurisdiction to prosecute defendant in New Jersey as to computer criminal activity, N.J.S.A. 2C:20-25(b). In pertinent part, that offense consists of the following elements:

> A person is guilty of computer criminal activity if the person purposely or knowingly and without authorization, or in excess of authorization:
>
> . . . .
>
> b. Alters, damages or destroys any data, data base, computer, computer storage medium, computer program, computer software, computer system or computer network, or denies, disrupts or impairs computer services, including access to any part of the Internet, that are available to any other user of the computer services[.]
>
> [N.J.S.A. 2C:20-25(b) (emphasis added).]

A "[u]ser of computer services" includes but is not limited to a person, business, or "computer" that "makes use of any resources of a computer, computer network, . . . data or data base." N.J.S.A. 2C:20-23(o). "Access" is defined as "to instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer storage medium, computer system, or computer network." N.J.S.A. 2C:20-23(a).

A-1262-15T1

We agree with the trial judge that Moreno was "a user of computer services" whose business was disrupted when the MedPro.com website, through which MedPro conducted its online business, was shut down by spam attacks. However, we cannot agree with the judge's conclusion that there was an insufficient "direct nexus" between the crime and New Jersey. As indicated in Sumulikoski, we conclude that the "direct nexus" is to be found by considering the jurisdiction statute and the elements of the crime.

Based on the evidence presented to the grand jury, there is jurisdiction to prosecute defendant in New Jersey for computer related crime, N.J.S.A. 2C:20-25, because defendant knowingly engaged in computer activity which had the result of denying, disrupting or impairing the victim's access to "any part of the Internet." N.J.S.A. 2C:20-25(b). Defendant targeted a web domain and email server, owned by an individual in Utah. However, that web domain and email server were directly connected to MedPro because MedPro conducted all of its business through the MedPro.com website and email.

Although defendant's conduct occurred in Florida, and its initial effect was to disrupt website domains and email servers owned by an individual in Utah, one of the intended and actual end results of the conduct was to cripple MedPro's access to internet

service.  Hence, although his conduct took place in Florida, defendant both inflicted a harm on MedPro and deprived MedPro of a benefit, in this State.  See N.J.S.A. 2C:1-3(a)(1), -3(g).

Viewing the evidence in the light most favorable to the State, defendant knew that Moreno operated MedPro and intended to disrupt Moreno's business, because he believed that Moreno conspired with Williams to steal defendant's business.  Under N.J.S.A. 2C:1-3(g), it does not matter that the "property that was affected by the offense" - the MedPro.com website and the servers that hosted it - were located in Utah.  What matters is that "the result which is an element" of the offense consisted of "inflicting a harm upon a resident of this State or depriving a resident of this State of a benefit."  N.J.S.A. 2C:1-3(g).

The fact that defendant's conduct occurred in Florida does not deprive this State of jurisdiction, where, as here, there was a "direct nexus" between defendant's purposeful and illegal out-of-state conduct and the intended harm his conduct caused to a New Jersey resident.  Accordingly, we reverse the dismissal of count 2 of the indictment, charging defendant with committing computer criminal activity, N.J.S.A. 2C:20-25(b).

Next, we address the impersonation charge. The relevant portions of the statute provide:

a. A person is guilty of a crime if the person engages in one or more of the following actions by any means including, but not limited to, the use of electronic communications or an Internet website:

(1) Impersonates another or assumes a false identity and does an act in such assumed character or false identity for the purpose of obtaining a benefit for himself or another or to injure or defraud another[.]

. . . .

c. A person who violates subsection a. of this section is guilty of a crime as follows:

. . . .

(3) If the actor obtains a benefit or deprives another of a benefit in the amount of $ 75,000 or more, . . . the actor shall be guilty of a crime of the second degree.

[N.J.S.A. 2C:21-17(a), (c).]

To be guilty of any grade of impersonation, a defendant must engage in the act of impersonation, for the purpose of obtaining a benefit or injuring another. N.J.S.A. 2C:21-17(a)(1). However, to be guilty of second-degree impersonation, the offense with which defendant is charged, the actor's unlawful conduct must also produce a specified result, i.e., depriving the victim of a benefit in an amount of $75,000 or more. N.J.S.A. 2C:21-17(c). To secure a conviction for second-degree impersonation, that element must be submitted to the jury. See State v. Federico, 103 N.J. 169,

174 (1986) (where a defendant is charged with first-degree kidnapping, failure to release the victim unharmed, which determines the grading of the offense, is an element that must be proven by the State and submitted to the jury); State v. Smith, 279 N.J. Super. 131, 141 (App. Div. 1995).

"Statutory provisions . . . cannot be read in isolation. They must be construed in concert with other legislative pronouncements on the same subject matter so as to give full effect to each constituent part of an overall legislative scheme." State v. Hodde, 181 N.J. 375, 379 (2004) (citations omitted). Reading the jurisdiction and impersonation statutes together in light of the legislative purpose, we conclude that the "result," consisting of the monetary harm to the victim, is an "element" of the crime of second-degree impersonation, within the meaning of the jurisdiction statute, even though its function is to establish the grade of the crime. See State v. Lawless, 214 N.J. 594, 608 (2013) (prohibiting the double counting of "[e]lements of a crime, including those that establish its grade"); see also State v. Fuentes, 217 N.J. 57, 75 (2014) (noting that the Legislature has "already considered the elements of an offense in the gradation of a crime" (citation omitted)).

The clear legislative purpose of the jurisdiction statute, N.J.S.A. 2C:1-3, is to extend this State's jurisdiction to results

as well as conduct, so long as either is an element of the offense. N.J.S.A. 2C:1-3(g) emphasizes that the statute is aimed at harm inflicted on residents of this State, even if the conduct is committed elsewhere and even if it involves property located elsewhere. Consequently, we infer that the Legislature intended the term "element" to have a broad meaning, consistent with the purpose of the statute. The legislative purpose is served by construing the jurisdiction statute as including "elements" that quantify the harm to the victim and determine the grading of the offense. That approach is consistent with Sumulikoski, which emphasizes the importance of results or conduct in determining territorial jurisdiction. Sumulikoski, supra, 221 N.J. at 103.

In this case, defendant committed the impersonation, or arranged for it to occur, in Florida. However, the alleged injurious result - the infliction of over $100,000 in economic damage to MedPro - occurred in New Jersey. We therefore conclude that this State has territorial jurisdiction to prosecute defendant for the impersonation offense charged in count three of the indictment, N.J.S.A. 2C:21-17(a), (c).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION