**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3449-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTWAN T. SIMMONS,

     Defendant-Appellant.

_____

Submitted April 9, 2025 – Decided August 18, 2025

Before Judges Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-01-0088.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to dismiss a four-count Camden County indictment, defendant Antwan T. Simmons pled guilty to second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1), as amended from a first-degree offense, charged in count one. Pursuant to the terms of his negotiated plea agreement with the State, defendant reserved the right to appeal the denial of his dismissal motion. See R. 3:9-3(f).

In accordance with the plea agreement, defendant was sentenced to a five-year prison term with a forty-two-month parole disqualifier pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).[1] On the State's motion, the court dismissed the remaining counts of the indictment: fourth-degree unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count two); third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1) (count three); and second-degree certain persons to not have weapons, N.J.S.A. 2C:39-7(b)(1) (count four). A June 28, 2023 judgment of conviction memorialized the disposition.

---

[1] Although the appellate record does not contain the Supplemental Plea Form for Graves Act Offenses, the parties did not cite the Graves Act during the plea or sentencing hearings, and the Graves Act is not reflected in the judgment of conviction, defendant's sentence is consistent with the Graves Act. See N.J.S.A. 2C:43-6(c) (requiring a minimum prison term of "one-half of the sentence imposed by the court or 42 months, whichever is greater" for certain firearm offenses, including N.J.S.A. 2C:39-5(b)).

A-3449-22

Pertinent to defendant's reprised contentions on appeal, after he was arraigned, the prosecutor provided the defense body-worn camera (BWC) footage of eight of the nine officers involved in defendant's arrest, except Detective Nicholas Palermo, a member of the Camden County Police Department's (CCPD) Narcotics Gang Unit (NGU). In support of his motion to dismiss the indictment, defendant argued the State violated Brady v. Maryland, 373 U.S. 83 (1963), because Palermo's BWC footage was presumptively exculpatory, the State purposely or inadvertently suppressed the evidence, and the footage was material to the defense.

The State opposed the motion, contending defendant could not demonstrate the footage was exculpatory or material to his case under Brady. The State further argued defendant failed to establish a due process violation, the applicable standard for suppressed, lost, or destroyed evidence.

Following argument, the judge denied defendant's motion. A January 18, 2023 order memorialized the judge's oral decision.

On appeal, defendant abandons his Brady violation argument and, as such, the issue is deemed waived. State v. Huang, 461 N.J. Super. 119, 125 (App. Div. 2018), aff'd o.b., 240 N.J. 56 (2019). Instead, in a single point, defendant contends:

THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BECAUSE THE MISSING BODY CAMERA FOOTAGE SMACKS OF BAD FAITH. IN THE ALTERNATIVE, THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING BEFORE A DIFFERENT JUDGE.
[(Partially raised below)]

A. If Palermo Had Activated His Body-Worn Camera, There Would Be A Record Of It.

B. Palermo Violated The Camden County Police Department's Body Worn Camera Policy By Failing To Activate His Camera Immediately After He Allegedly Observed [Defendant] In Possession of A Suspected Gun.

C. Palermo Was Not Working "Undercover" Or Otherwise Exempt From Wearing His Body-Worn Camera, And Because The Claim That [Defendant] "Sold Drugs To An Undercover Detective" Was False, Palermo Was Not Exempt From Activating His Body-Worn Camera.

D. The Judge's Order Denying Dismissal Of The Indictment Must Be Reversed, Because Palermo's Failure to Comply With His Department's Body Worn Camera Policy, Combined With Counsel's Unrefuted Representation That Palermo Authored A Report Falsely Claiming that [Defendant] Sold Drugs to An Undercover Detective, Smacks Of Bad Faith.

Unpersuaded by defendant's reprised and belated arguments, we affirm.

4

A-3449-22

We summarize the facts from the briefs and arguments before the motion judge, noting defendant did not support his motion with the incident report from which the facts were derived. Nor did defendant request a testimonial hearing.

On October 24, 2021, NGU detectives were on patrol in Camden's Centerville neighborhood. Around 6:00 p.m., Palermo noticed defendant, described by Palermo as "a Black male, [wearing] a white sweatshirt, black pants, and Timberland boots," riding a bicycle and adjusting his waistband multiple times. Palermo saw an object with a black handle protruding from defendant's waistband. Palermo believed the object was a handgun. Police followed defendant until he stopped at an intersection. Following a stop and frisk, police seized a loaded 9mm semi-automatic handgun from defendant, who did not have a permit to possess the handgun. Defendant was arrested and searched. Police seized ten oxycodone pills from his fanny pack.

After defendant was indicted, the prosecutor attempted to obtain Palermo's BWC video footage from the CCPD but twice was informed "all available footage had been provided; no footage for . . . Palermo was retained." During oral argument before the motion judge, the prosecutor explained while

5

"prepar[ing] for the motion to suppress,"[2] Palermo stated "he believed that he had [the BWC] on his person" at the time of the incident but "could not remember whether he activated it or not." The parties agreed it was unknown whether the video footage ever existed.

The prosecutor further proffered that Palermo, unlike the other detectives involved in defendant's arrest, was wearing plain clothes and conducting undercover surveillance at the time of the incident. Accordingly, the prosecutor argued Palermo was not required to activate his camera under the governing statute.

Defense counsel disputed Palermo was working undercover. She further argued Palermo falsely claimed in his report defendant "sold CDS to an undercover detective." Defense counsel acknowledged the police report was not included in her submissions supporting defendant's dismissal motion. She further acknowledged "[she] d[id] not have any evidence to suggest" Palermo's BWC footage was purposely or willfully destroyed.

In her decision, the judge initially recognized the parties did not dispute Palermo "either did not have the [BWC] on," or if he did activate the camera,

---

[2] We glean from the record, defendant contemplated, but did not file, a motion to suppress evidence seized by police. Apparently, the prosecutor meant she spoke with Palermo about the present motion.

the video was "lost or inadvertently destroyed." Citing the governing law, the judge found defendant failed to establish a Brady violation. The judge reasoned defendant could not establish the video footage was exculpatory, if it even existed. Instead, "[w]hat really matter[ed wa]s what the detective saw and if he's credible." The judge explained defendant would still receive a fair trial without the video footage because Palermo was subject to cross-examination.

The judge also considered the State's argument that defendant failed to establish a due process violation for the suppressed, lost, or destroyed BWC footage. Citing our decisions, the judge correctly recognized the standard for such violations requires the court consider: "(1) whether there was bad faith or connivance on the part of the government; (2) whether the evidence was sufficiently material to the defense; and (3) whether the defendant was prejudiced by the loss or destruction of evidence." State v. M.B., 471 N.J. Super. 376, 382-83 (App. Div. 2022) (quoting State v. Hollander, 201 N.J. Super. 453, 479 (App. Div. 1985)). Further "'[i]n the absence of bad faith, relief should be granted to a defendant only where there is a showing of manifest prejudice or harm arising from the failure to preserve evidence.'" Id. at 383 (quoting State v. Dreher, 302 N.J. Super. 408, 489 (App. Div. 1997), abrogated on other

grounds by State v. Brown, 170 N.J. 138 (2001)) (internal quotation marks omitted).

Turning to the proffers before her, the judge found the parties did not dispute the lack of "evidence of bad faith on the part of the government." The judge elaborated:

> [A]lthough the evidence could potentially touch on . . . Palermo's credibility, [its absence] does not deny the defense the opportunity to question the detective through cross-examination, highlight any inconsistencies on the officer's part, in comparison . . . to whatever the other officers [would] have indicated or testified to. The defense would not be prejudiced because the body-worn camera is only one object that they could use to impeach the detective.

The judge further recognized it was unclear whether Palermo's BWC footage "ever existed, and even if it did exist, . . . it's not clear that it would have shown what the detective says that he saw." The judge concluded "[t]he key" was Palermo's testimony under oath regarding his observations of defendant and whether that testimony was credible. Quoting our decision in State v. Washington, 165 N.J. Super. 149, 156 (App. Div. 1979), the judge was convinced dismissal of the indictment was not warranted. The judge concluded defendant failed to demonstrate "evidence of bad faith by the State" and "manifest and harmful prejudice to . . . defendant."

8

Finally, the judge denied without prejudice defendant's alternative application for an adverse inference. The judge reasoned defendant could renew his application at the conclusion of Palermo's testimony.

On appeal, defendant challenges the judge's findings that "there was no bad faith or connivance on the part of the [CCPD]." He claims Palermo was not exempt from activating his BWC because the detective was not working in an undercover capacity during the incident. Defendant argues Palermo's failure to activate the BWC, together with his "report that falsely claimed [defendant] had sold drugs to an undercover detective," constituted bad faith and violated defendant's right to due process. Other than a passing reference to the "Attorney General Guidelines" during oral argument before the motion judge, defendant now argues Palermo failed to activate his BWC, because if he had, there would have been a record of any BWC video, pursuant to the CCPD's policies and the Attorney General's BWC Policy, issued pursuant to Law Enforcement Directive No. 2021-5 (BWC Directive). Off. of the Att'y Gen., Law Enf't Directive No. 2021-5, Directive Revising Policy Regarding Use of Body Worn Camera (BWCs) and Stored BWC Recordings (May 25, 2021); Off. of the Att'y Gen., Body Worn Camera Policy (May 2021).

Defendant maintains dismissal of the indictment was warranted. In the alternative, he argues the matter should be remanded for an evidentiary hearing before a different judge to develop "a fuller record on the issue of bad faith."

Now represented by the Office of the Attorney General on appeal, the State urges us to affirm primarily for the reasons stated by the motion judge. The State further argues there was no violation of the BWC statute, N.J.S.A. 40A:14-118.3 to -118.5, or the BWC Policy, but had a violation occurred, there was "no legal basis to employ the drastic remedy of dismissing the indictment."

We have considered defendant's contentions in view of the applicable law and the record before the motion judge, and conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons stated by the judge in her cogent oral decision. We add the following remarks.

An appellate court reviews a trial court's decision on a motion to dismiss an indictment for abuse of discretion. State v. Tringali, 451 N.J. Super. 18, 27 (App. Div. 2017). "A trial court decision will constitute an abuse of discretion where 'the decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Salter, 425 N.J. Super. 504, 514 (App. Div. 2012) (alteration in original)

(quoting State v. Triestman, 416 N.J. Super. 195, 202 (App. Div. 2010)). "When the decision to dismiss relies on purely a legal question, however, we review that determination de novo." State v. Twiggs, 233 N.J. 513, 532 (2018).

"One of the guiding principles to be followed by a court when considering a motion to dismiss an indictment is that 'a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground.'" State v. Zembreski, 445 N.J. Super. 412, 424-25 (App. Div. 2016) (quoting State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015)). "Before a dismissal of an indictment is warranted . . . there must be a finding of intention inconsistent with fair play and therefore inconsistent with due process, or an egregious carelessness or prosecutorial excess tantamount to suppression." Washington, 165 N.J. Super. at 156 (quoting State v. Laganella, 144 N.J. Super. 268, 282 (App. Div. 1976)). "In the absence of these conditions," the court should dismiss an indictment "only if otherwise there would be manifest and harmful prejudice to defendant." Ibid. (quoting Laganella, 144 N.J. Super. at 282-83).

However, "the public interest in the completion of criminal trials weighs against [dismissing an indictment] where other remedies are available." State v. Ruffin, 371 N.J. Super. 371, 388 (App. Div. 2004). Accordingly, "this drastic

11

remedy is inappropriate where other judicial action will protect a defendant's fair trial rights." State v. Clark, 347 N.J. Super. 497, 508 (App. Div. 2002).

Before the motion judge, defendant acknowledged he could not demonstrate anyone affiliated with the State "purposely or willfully destroyed" Palermo's BWC footage. Indeed, there is no evidence in the record to establish Palermo's BWC video existed, let alone was lost, suppressed, or destroyed in bad faith. Bad faith requires more than negligence; it requires a deliberate effort to deny a defendant access to exculpatory evidence. See State v. Peterkin, 226 N.J. Super. 25, 42-43 (App. Div. 1988). We therefore discern no error in the motion judge's finding that defendant failed to demonstrate the State acted in bad faith.

Defendant's contentions under the BWC statute, BWC Directive and Policy, and CCPD's policies also lack merit. Pursuant to N.J.S.A. 40A:14-118.3(a), "every uniformed State, county, and municipal patrol law enforcement officer shall wear a [BWC] that electronically records audio and video while acting in the performance of the officer's official duties, except" in certain limited statutorily defined circumstances.

The statutory framework requires activation of a BWC

> whenever the officer is responding to a call for service or at the initiation of any other law enforcement or

investigative encounter between an officer and a member of the public, in accordance with applicable guidelines or directives promulgated by the Attorney General . . . . The [BWC] shall remain activated until the encounter has fully concluded and the officer leaves the scene.

[N.J.S.A. 40A:14-118.5(c)(1).]

Under N.J.S.A. 40A:14-118.5(q):

If a law enforcement officer . . . fails to adhere to the recording or retention requirements . . . or intentionally interferes with a [BWC]'s ability to accurately capture audio or video recordings:

. . . .

(2) there shall be a rebuttable presumption that exculpatory evidence was destroyed or not captured in favor of a criminal defendant who reasonably asserts that exculpatory evidence was destroyed or not captured.

Assuming without deciding the BWC statute was violated here, dismissal of the indictment was not an available remedy thereunder. Further, "[t]he failure to comply with the BWC Directive does not constitute a constitutional violation." State v. Seligman, 480 N.J. Super. 509, 522 (App. Div.), certif. denied, 260 N.J. 319 (2025). By extension, the same is true of local police policy, modeled after the BWC Policy. Thus, defendant's potential remedy, following Palermo's testimony at a hearing on a motion to suppress evidence

seized or trial, was a "presumption that exculpatory evidence was destroyed or not captured in [his] favor." See N.J.S.A. 40A:14-118.5(q)(2).

Finally, as the motion judge correctly recognized, it was unlikely the BWC would have recorded Palermo's observations of the handle protruding from defendant's waistband while riding his bicycle. On this record, we discern no error in the judge's decision denying defendant's motion. See Tringali, 451 N.J. Super. at 27.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hawley

Clerk of the Appellate Division

A-3449-22