**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0898-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARVIN GOODWIN,

     Defendant-Appellant.

_____

Submitted November 20, 2025 – Decided December 2, 2025

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 21-08-0113.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Alison Gifford, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Laura E. Wojcik, Deputy Attorney General, of counsel and on the briefs).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Marvin Goodwin appeals from an April 19, 2023 order denying a motion to dismiss an indictment charging him with: first-degree racketeering in violation of N.J.S.A. 2C:41-2(c), (d) (count one); first-degree promoting organized street crime in violation of N.J.S.A. 2C:33-30 (count two); and second-degree conspiracy to distribute controlled dangerous substances (CDS) and/or maintain or operate a CDS production facility, in violation of N.J.S.A. 2C:35-4, -5(a)(1), -5(b)(1), -5(b)(4), and N.J.S.A. 2C:5-2 (count three). He also challenges his sentence. We affirm the denial of the dismissal motion, but reverse and remand the sentence for further findings.

In August 2021, a grand jury indicted defendant based on testimony presented by the State through the detective who led its investigation. The detective worked for the New Jersey Division of Criminal Justice (DCJ) Gangs and Organized Crime Bureau. In January 2020, the DCJ and the Paterson Police Department began an eight-month investigation of defendant and his associates, named "Operation 42-50." The 42-50 moniker belongs to a subset of the Crips Gang operated by defendant and his co-defendant Terike Gass.

Before testifying about the investigation, the detective told the grand jury he oversaw investigations of narcotics-related cases. He took multiple trainings

in: investigations; narcotics; and identifying gangs and their elements, including gang symbols, hierarchies, and coded language. Most of the detective's work occurred in Paterson and he was very familiar with the city.

According to the detective, defendant and Gass were operating an open-air drug market along with thirteen subordinates. The detective described how police collected physical and electronic surveillance evidence. The latter was obtained by installing pole cameras, GPS tracking on Gass's vehicle in which defendant was often a passenger, bugs, and cell phone taps. Police also identified the properties controlled by the gang, noting they were located on one-way streets to better monitor police presence and enable buyers to purchase narcotics while moving with the flow of traffic.

The detective testified about numerous hand-to-hand transactions police observed occurring from Gass's vehicle. They also conducted twelve undercover drug purchases. Police observed defendant giving drugs to runners and accepting money from the runners after they sold their drugs. The detective testified the enterprise operated like a legitimate business and had a hierarchy in which defendant and Gass supplied and resupplied drugs in bulk form to street bosses, who then gave smaller amounts of drugs to runners to sell to customers. The income from the drugs flowed in the opposite direction up the hierarchy.

 A-0898-24

The detective testified about code words the gang used to identify a brick of heroin, the gang's drug brand names, and how defendant and Gass controlled the brands sold by the gang. Defendant supervised drug sales as well; on one occasion he asked an undercover officer if he was being served. Electronic surveillance captured Gass counseling defendant's sister, who was a street boss, that there was strength in numbers when the pair were discussing concerns about the encroachment of other gangs on their territory. Surveillance also overheard Gass tell another individual, "we sell for Marv," meaning defendant.

The detective testified police executed warrants at the properties controlled by the gang. In one property, they discovered a drug-manufacturing facility and retrieved a quantity of drugs and money, which evidenced a drug-distribution operation. A search of Gass's vehicle also revealed an amount of drugs inconsistent with personal use.

At the conclusion of the detective's testimony, a grand juror asked: "So this is an ongoing investigation into this gang, and so we have seen evidence that the members of the gang were handling contraband. Is that what it is coming to?" The detective responded that during the investigation "contraband was recovered from multiple members of the 42-50 operation;" he believed the contraband was "possessed by those members on behalf of 42-50;" and "42-50

4

was an organization associated with a criminal street gang." The indictment followed.

Defendant and his co-defendants moved to dismiss the indictment, arguing the State failed to present sufficient evidence. Among the arguments raised by defendants was that the detective gave improper expert testimony.

The motion judge recounted in detail the evidence the State adduced before the grand jury. He concluded the detective's role in explaining the quantity of drugs and money, "the hand-to-hand transactions, . . . the numerous [drug] stash locations, the physical and electronic evidence, surveillance, the packaging materials, and all of the surrounding circumstances" would not have changed the outcome. Although the detective offered an opinion, the grand jurors "would have felt free to decide" whether to indict. The detective's testimony did not infringe on the grand jury because it "would have issued the same indictment. . . . [T]here was overwhelming evidence as to [the] distribution, and that would have been sufficient [to indict] . . . ."

Defendant subsequently pled guilty to count three. In exchange for the plea, the State offered a nine-year prison term with a four-and-one-half-year parole disqualifier.

A-0898-24

At sentencing, the trial judge found aggravating factor one and gave it low weight. He found aggravating factor three and gave it medium weight. Aggravating factor five applied and received low-to-medium weight. The judge also found aggravating factors six and nine and gave them medium weight.

The judge found mitigating factor nine and gave it minimum weight. He also found non-statutory mitigating factors, namely, defendant obtained his high school diploma, "which would permit him[,] as his plans are[,] to get gainful employment."

After balancing the aggravating and mitigating factors, the judge found "the aggravating factors preponder the mitigating factors." The judge sentenced defendant in accordance with the plea recommendation.

Defendant raises the following points in his counseled brief on appeal:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BECAUSE A) [THE] DETECTIVE . . . PROVIDED IMPROPER OPINION TESTIMONY THAT CLEARLY INFRINGED UPON THE GRAND JURY'S FUNCTION; AND B) THE STATE FAILED TO MAKE OUT A PRIMA FACIE CASE AGAINST DEFENDANT.
>
> > A) [The] Detective . . . Impermissibly Opined On [Defendant's] Guilt.

6

B) There Was Insufficient Evidence To Indict [Defendant].

POINT II

RESENTENCING IS REQUIRED BECAUSE THE COURT FAILED TO FIND RELEVANT MITIGATING FACTORS, AND BECAUSE THE COURT'S FINDINGS DID NOT SUPPORT THE IMPOSITION OF THE MANDATORY MINIMUM SENTENCE.

Defendant argues the following points in his self-represented brief:

POINT I: THE GRAND JURY PROCESS WAS COMPROMISED BY IMPROPER EXPERT TESTIMONY AND VIOLATIONS OF DEFENDANT'S DUE PROCESS RIGHTS.

POINT II: DEFENDANT'S FAILURE TO RAISE SPECIFIC ARGUMENTS BELOW DID NOT CONSTITUTE A WAIVER UNDER RULE 3:9-3(f), AND THIS COURT RETAINS AUTHORITY TO REVIEW FOR PLAIN ERROR.

POINT III: THE INDICTMENT WAS SECURED THROUGH SPECULATIVE, OPINION-BASED TESTIMONY THAT USURPED THE GRAND JURY'S FACT-FINDING ROLE AND OMITTED CRUCIAL RECORDINGS THAT SHOULD HAVE BEEN PRESENTED.

I.

It is understood an indictment must "allege[] all the essential facts of the [charged] crime." State v. L.D., 444 N.J. Super. 45, 55 (App. Div. 2016)

7

(quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 19 (1984)). The State must also allege every element of an offense in the indictment and provide evidence of each element to the grand jury. State v. Fortin, 178 N.J. 540, 633 (2004).

"[A] dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground." State v. Zembreski, 445 N.J. Super. 412, 424-25 (App. Div. 2016) (quoting State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015)). Unless an indictment "is manifestly deficient or palpably defective," it must stand. State v. Twiggs, 233 N.J. 513, 531-32 (2018) (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)).

"A trial court deciding a motion to dismiss an indictment determines 'whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and . . . the defendant committed it.'" State v. Brady, 452 N.J. Super. 143, 158 (App. Div. 2017) (quoting State v. Saavedra, 222 N.J. 39, 56-57 (2015)). "As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." State v. Nicholson, 451 N.J. Super. 534, 541 (App. Div. 2017) (quoting State v. Feliciano, 224 N.J. 351, 380 (2016)). "[T]he quantum of such evidence 'need not be great.'" State v.

Fleischman, 383 N.J. Super. 396, 399 (App. Div. 2006) (quoting State v. Schenkolewski, 301 N.J. Super. 115, 137 (App. Div. 1997)), aff'd, 189 N.J. 539 (2007).

As such, a defendant challenging an indictment has a "heavy burden" in showing the "evidence is clearly lacking to support the charge." State v. Graham, 284 N.J. Super. 413, 417 (App. Div. 1995) (quoting State v. McCrary, 97 N.J. 132, 142 (1984)). "However, '[s]crutiny of grand jury proceedings is particularly probing where a motion to dismiss an indictment claims that a "deficiency in the proceedings affect[ed] the grand jurors' ability to make an informed decision whether to indict."'" State v. Tucker, 473 N.J. Super. 329, 343 (App. Div. 2022) (alterations in original) (quoting State v. Bell, 241 N.J. 552, 560 (2020)). "[D]ismissal of an indictment is warranted only if the prosecutor's conduct 'impinge[s] on a grand jury's independence and improperly influence[s] its determination.'" Id. at 344 (alterations in original) (quoting Bell, 241 N.J. at 561).

We review an order determining the sufficiency of an indictment for an abuse of discretion. State v. Tringali, 451 N.J. Super. 18, 27 (App. Div. 2017). "However, we review the trial court's legal conclusions de novo." State v. Nicolas, 461 N.J. Super. 207, 211 (App. Div. 2019).

A-0898-24

Pursuant to these principles and having considered the record, we reject arguments raised in Point I of defendant's counseled brief, and in Points I and III of his self-represented brief. At the outset, we need not reach the argument raised in Point II of defendant's self-represented brief because we will address the merits of the arguments related to the denial of the dismissal of the indictment.

In State v. Cain, our Supreme Court held, "[g]oing forward," a law enforcement officer may not testify at trial that, in their expert opinion, a defendant possessed narcotics with intent to distribute. 224 N.J. 410, 413-14, 429 (2016). In State v. Covil, the Court held the term, "going forward," in Cain meant the new rule established in that case applied to Cain and cases tried after its ruling. 240 N.J. 448, 469-70 (2020). We later applied Cain to grand jury proceedings "[g]oing forward" in Tucker, 473 N.J. Super. at 348-49.

Cain was inapplicable here because the grand jury proceedings took place one year before we decided Tucker. Regardless, the trial judge correctly found even under Tucker, there were no grounds to dismiss the indictment because the detective did not offer improper opinion testimony, when compared with the objective fact evidence presented.

10

N.J.S.A. 2C:41-2(c) states: "It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." N.J.S.A. 2C:41-2(d) criminalizes a conspiracy to engage in racketeering. Under N.J.S.A. 2C:33-30, "[a] person promotes organized street crime if [they] conspire[] with others as an organizer, supervisor, financier or manager to commit any crime specified in chapters 11 through 18, 20, 33, 35, or 37 of Title 2C of the New Jersey Statutes."

N.J.S.A. 2C:35-4 criminalizes the knowing maintenance or operation of "any premises, place or facility used for the manufacture of" CDS "or any person who knowingly aids, promotes, finances or otherwise participates in the maintenance or operations of such premises." N.J.S.A. 2C:35-5(a)(1) prohibits a person from knowingly or purposely manufacturing, distributing, dispensing, possessing, or having "under [their] control with intent to manufacture, distribute or dispense, a [CDS] or controlled substance analog." A person is guilty of conspiracy if they agree "to aid such other person or persons in the planning or commission of such [a] crime or of an attempt or solicitation to commit such [a] crime." N.J.S.A. 2C:5-2(a)(2).

A-0898-24

In reviewing the grand jury proceedings, the trial judge found "overwhelming evidence tying" defendant and his co-defendants to "supplying drugs and coordinating" their operation. The investigation confirmed defendant as the leader "based on a bug that was placed in [Gass's] vehicle, [a] wiretap on his phone, [and twelve] undercover purchases of the [42-50] . . . branded drugs." Defendant and Gass were seen together in defendant's vehicle during an undercover purchase. The vehicle "play[ed] a very significant role" in supplying runners with drugs, including fentanyl, which was purchased by an undercover officer. During another undercover buy, defendant "approache[d] the undercover vehicle and interacted with the undercover officer in a supervisory manner, then walked away from the vehicle towards . . . another runner." This runner then sold fentanyl to the undercover officer.

The judge noted defendant "does not often appear . . . but he's close by in this area. . . . Thus, . . . the grand jurors could have inferred and concluded . . . he's the leader . . . who's trying to insulate himself from day-to-day narcotics business." This was confirmed by an electronic intercept in which Gass said the group was selling for defendant for years.

The judge properly found "based upon [defendant's] role and knowledge that he had, . . . his heavy involvement, [and] his presence, the grand jurors [had]

12

a prima facie showing as to the charge of racketeering [as it] was presented as to [him]." As to promoting organized street crime and conspiracy, the judge correctly found there was "equal proof" presented of a prima facie case for the grand jury to indict defendant.

The facts and evidence presented to the jury established the offenses charged under N.J.S.A. 2C:35-4, N.J.S.A. 2C:35-5(a)(1), and N.J.S.A. 2C:5-2(a)(2), including: defendant's entry into and exit from properties with drug product, which he later distributed to his underlings; the drugs and money later seized from those properties; and defendant's presence in Gass's vehicle where drugs were also seized.

Having reviewed the record ourselves, we discern no reversible error in the trial judge's findings because, viewed in a light most favorable to the State, the rational inferences drawn from the evidence record contained prima facie evidence of the counts charged in the indictment. The detective's opinions about the nature of the operation were entirely secondary to the objective evidence presented, which in every instance, came from the words and actions of defendant and his co-defendants.

A-0898-24

II.

We typically employ a deferential standard when reviewing a trial court's sentencing decision. State v. Fuentes, 217 N.J. 57, 70 (2014). "[A] trial court should identify the relevant aggravating and mitigating factors, determine which factors are supported by a preponderance of evidence, balance the relevant factors, and explain how it arrives at the appropriate sentence." State v. O'Donnell, 117 N.J. 210, 215 (1989). The court "must qualitatively assess" the factors it finds and assign each "its appropriate weight." State v. Case, 220 N.J. 49, 65 (2014). It must "explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence." Id. at 66.

In Point II of defendant's counseled brief, he argues the court erroneously rejected mitigating factor eight. Defendant alleged the factor applied because he committed his crimes due to the financial instability caused by the COVID-19 pandemic. He claims the court did not consider his rehabilitation while in jail, which showed he would react differently if faced with similar financial insecurity in the future. Defendant also asserts the court did not make the required findings for imposition of a mandatory minimum sentence.

14

We reject defendant's argument regarding mitigating factor eight. The factor requires a sentencing court to consider whether "[t]he defendant's conduct was the result of circumstances unlikely to recur." N.J.S.A. 2C:44-1(b)(8). The record shows the judge considered defendant's pandemic-related argument. The judge reasoned "just about everyone around the world was affected by [the] pandemic[,] but resorting to committing offenses, I do not find that is an appropriate consideration. . . . I do not find [mitigating] factor . . . eight . . . is applicable. Even if it w[ere], I would not have given [it] much consideration."

Finally, to impose a mandatory minimum sentence, a court must be "clearly convinced . . . the aggravating factors substantially outweigh the mitigating factors." N.J.S.A. 2C:43-6(b). We are constrained to reverse and remand the sentence for reconsideration because the judge did not make the necessary findings required by the statute.

## III.

Affirmed in part, and reversed and remanded in part for re-sentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0898-24